PETTIGREW, J.
| ¿At all times pertinent hereto, Boh Bros. Construction Co., L.L.C. (“Boh”) and the State of Louisiana, through the Department of Transportation and Development (“DOTD”), were bound by a valid contract concerning the construction of a bridge and related improvements in Iberia Parish. In connection with its contract with DOTD, Boh entered into a purchase order contract with Manufab, Inc. (“Manu-fab”) to supply certain materials for the project, including specialized fabricated gears, bearings, and other materials. Ma-nufab obtained the materials and stored them in its warehouse in Pearlington, Mississippi. Manufab submitted an invoice for the materials to Boh, which in turn submitted an invoice to DOTD. As provided for in the contract, DOTD paid Boh for the stockpiled materials, and Boh, in turn, paid Manufab.
Thereafter, in August 2005, the storm surge created by Hurricane Katrina inundated Manufab’s warehouse in Mississippi where the materials were stored. The exposure of the materials to saltwater caused irreparable damage to some of the materials and required refabrication and/or replacement. Boh requested that DOTD pay the cost of refabrication and/or replacement of the damaged materials for the project, but DOTD refused to pay. According to intradepartmental correspondence dated February 23, 2006, this denial was “based on DOTD policy that the obligation to bear the expense of repairing damage to the work relates to materials already on the site and within the project’s right-of-way, that is, or will become a permanent part of the finished project.” In a subsequent letter to Boh, dated May 15, 2006, DOTD again advised that the requested cost was not eligible for reimbursement to the contractor or material supplier. DOTD continued as follows: “Bearings manufactured and stored at the supplier’s facility are not considered part of the work. As stated in Subsection 109.07, Payment for Stockpiled or Stored Material, DOTD is not responsible [for] such materials until incorporated into the work.”
Boh filed an action for breach of contract against DOTD on July 9, 2007. Therein, Boh sought $213,315.43, plus judicial interest, for the damages allegedly caused by Hurricane Katrina. In the alternative, Boh prayed for declaratory relief. DOTD promptly 13filed responsive pleadings. The parties then filed cross-motions for summary judgment. The motions were heard by the trial court on March 10, 2008. The trial court denied DOTD’s motion, but granted summary *984 judgment in favor of Boh. The trial court signed a judgment on April 15, 2008, awarding Boh $213,315.43, plus judicial interest, for DOTD’s breach of contract. It is from this judgment that DOTD has appealed, arguing the trial court erred in granting summary judgment in favor of Boh. The narrow issue presented for our review is whether the contract at issue provided that DOTD was legally responsible for stockpiled materials stored off the project site, not incorporated into the work, and damaged by an “Act of God.”
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Henderson v. Kingpin Development Co., 2001-2115, p. 4 (La.App. 1 Cir. 8/6/03), 859 So.2d 122, 126. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
When parties are bound by a valid contract and material facts are not in conflict, the contract’s application to the case is a matter of law and summary judgment would be appropriate. Ginger Mae Financial Services, L.L.C. v. Ameribank, FSB, 2002-2492, p. 4 (La.App. 1 Cir. 9/26/03), 857 So.2d 546, 548, writ denied, 2003-2983 (La.1/16/04), 864 So.2d 634. A determination of the existence or absence of an ambiguity in a contract entails a question of law. An appellate review that is not founded upon any factual findings made at the trial court level, but rather, is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. In such cases, appellate review is simply whether the trial court was legally correct. Claitor v. Delahoussaye, 2002-1632, p. 11 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, 478, writ denied 2003-1820 (La.10/17/03), 855 So.2d 764.
| ¿Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 16 (La. App. 1 Cir. 3/11/94), 634 So.2d 466, 479, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. La. Civ. Code art.2045; Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. La. Civ. Code art.2046; Woodrow Wilson Const. Co., Inc. v. MMR-Radon Constructors, Inc., 93-2346, p. 3 (La.App, 1 Cir. 4/8/94), 635 So.2d 758, 759, writ denied, 94-1206 (La.7/1/94), 639 So.2d 1167.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. Civ.Code art.2046; Belle Pass Terminal, Inc., 92-1544 at 17, 634 So.2d at 479. The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. La. Civ.Code art.2046, comment (b); Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Belle Pass Terminal, Inc., 92-1544 at 17, 634 So.2d at 479.
*985 To determine the meaning of words used in a contract, a court should give them their “generally prevailing meaning.” La. Civ.Code art.2047. If a word is susceptible of different meanings, it “must be interpreted as having the meaning that best conforms to the object of the contract.” La. Civ.Code art.2048. “A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.” La. Civ.Code art. 2049. Furthermore, every “provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” | -,La. Civ.Code art.2050. Moreover, in the interpretation of contracts, the specific controls the general. Smith v. Burton, 2004-2675, p. 6 (La.App. 1 Cir. 12/22/05), 928 So.2d 74, 79.
With these rules of contract interpretation and summary judgment practice in mind, we review de novo the provisions of the contract. As agreed to by the parties, the Louisiana Standard Specifications for Roads and Bridges, 2000 Edition (“Red Book”), comprised part of the agreement for the project in question. The following Red Book provisions set forth the parties’ intentions with respect to the issues before us.
101.03 DEFINITIONS.
Materials. Any substances used in the work.
Work. The furnishing of labor, materials, services, equipment and incidentals necessary for successful completion of the project and the carrying out of all obligations imposed by the contract. 107.19 CONTRACTOR’S RESPONSIBILITY FOR WORK. Until final acceptance, the contractor shall have the charge and care of the work and shall take every precaution against damage to any part thereof by action of the elements, vandalism, theft or from other cause, whether arising from execution or non-execution of the work. The contractor shall rebuild, repair, restore or pay for damages, including theft and vandalism, to the work before final acceptance and shall bear the expense thereof, except for the following:
[[Image here]]
(b) Damage due to Acts of God such as earthquake, tidal wave, tornado, hurricane or other cataclysmic phenomenon of nature or acts of governmental authorities.
109.07 PAYMENT FOR STOCKPILED OR STORED MATERIAL.
(a) General: Payment for stockpiled or stored material will be considered only for materials anticipated to be stored for periods in excess of 90 calendar days.... It shall be the contractor’s responsibility to protect the material from damage while in storage.
[[Image here]]
Title and ownership of materials for which advancements have been made by the Department shall not vest in the Department until such materials are incorporated in the work and the work accepted by the Department. The making of advancements by the Department shall not release the contractor from the responsibility for any portion thereof.
DOTD insists the trial court erred in not affording the appropriate weight to the stockpiled/stored material provision of the contract, urging that pursuant to the language contained in Section 109.07, DOTD was not vested with title or ownership of the materials Runtil such materials were incorporated into the work. DOTD further argues that moveable materials did not become the work until incorporation. Thus, DOTD asserts, it would not be responsible for' repair to the materials dam *986 aged by Hurricane Katrina because they had not yet been incorporated into the work.
Boh argues that while title and ownership did not pass to DOTD, DOTD accepted the limited, yet clearly defined risk of loss of the materials due to a hurricane. Boh urges that Section 101.03 clearly defines work as the furnishing of materials for the project. It acknowledges that Section 109.07, which allows DOTD to make advance payment for stockpiled/stored materials, does not compromise acceptance of the work or the parties’ responsibilities with respect to the risk of loss of the materials as set forth in the contract. However, Boh contends proper resolution of this matter hinges on interpretation of Section 107.19, which limits the contractor’s responsibility for the work by clearly setting forth that “the contractor shall ... restore or pay for damages ... to the work before final acceptance and shall bear the expense thereof, except for ... [djamage due to Acts of God such as ... tidal wave, ... hurricane or other cataclysmic phenomenon of nature.” Boh maintains that based on the undisputed facts of this case and this provision of the contract, the expense of restoration and/or replacement of the materials falls outside of the contractor’s scope of responsibility and, thus, falls to DOTD.
We have thoroughly reviewed the evidence in the record and the applicable law and agree with Boh’s interpretation of the contract provisions. The terms and provisions of the contract are clear and explicit. “Work” included the furnishing of materials for the project. As the contractor on the project, Boh was responsible for all damage to the work before final acceptance except for damage due to Acts of God, such as the damage caused by Hurricane Katrina. This Section of the Red Book, which is the only provision that specifically mentions Acts of God, clearly controls this situation. DOTD’s argument that the general provisions dealing with stockpiled/stored materials somehow alter the specific provisions of Section 107.19 regarding damages due to Acts of God is, as Boh aptly points out, “strained and illogical.”
17DOTD failed to bear its burden of producing evidence that there were genuine issues of material fact concerning its responsibility for the refabrication and/or replacement of the damaged materials for the project. Accordingly, summary judgment in favor of Boh was warranted. Therefore, we affirm the trial court’s April 15, 2008 judgment in accordance with Uniform Rules — Courts of Appeal, Rule 2-16.IB and assess appeal costs in the amount of $1,375.00 against DOTD.
AFFIRMED.
HUGHES, J., concurs.
McDONALD, J., dissents and will assign reasons.