GUIDRY, J.
12A former football coach appeals a summary judgment dismissing his claim for breach of contract. Finding that the trial court legally erred in interpreting the subject employment contract, we reverse.
FACTS AND PROCEDURAL HISTORY
In April 1999, Jerry Lee Baldwin entered into a contract with the Board of Supervisors for the University of Louisiana System (Board) to serve as the head football coach at the University of Louisiana at Lafayette (ULL).[1] The contract was for a term of 49 months and 20 days, commencing on December 11, 1998, and concluding on January 31, 2003. As head football coach, Mr. Baldwin was required “to perform all those services pertaining to the position as prescribed by [ULL] through the President and Athletic Director.” On November 26, 2001, Mr. Baldwin was relieved of his duties as head football coach.
Following his dismissal as head football coach, Mr. Baldwin filed a petition for damages against the Board, ULL, and Nelson Schexnayder, individually and as the director of athletics for ULL (collectively “defendants”). In the petition, Mr. Baldwin claimed damages for breach of *652 contract, abuse of rights, intentional and negligent infliction of emotional distress, and unpaid wages against all the named defendants and further claimed damages for tortious interference -with contract against Mr. Schexnayder. By an amending and supplemental petition, Mr. Baldwin added a claim for damages based on racial discrimination against all the defendants.
On March 21, 2005, the defendants filed a motion for summary judgment, seeking dismissal of all of Mr. Baldwin’s claims; however, the trial court only granted a partial summary judgment dismissing Mr. Baldwin’s claim for racial ^discrimination. This court later reversed that partial summary judgment, finding that genuine issues of material fact existed precluding the partial summary judgment. Baldwin v. Board of Supervisors for University of Louisiana System, 06-961 (La.App. 1st Cir.5/4/07), 961 So.2d 418.
On remand, the matter proceeded to a jury trial on the merits. Following the jury trial, held October 9-18, 2007, judgment was rendered in favor of Mr. Baldwin, awarding him $2,002,676.37 in total damages for his claims of racial discrimination, breach of contract, abuse of rights, interference with a contract, and negligent infliction of emotional distress. On appeal, this court vacated the judgment and remanded the matter for a new trial after finding several reversible errors, some of which were deemed to be material and structural in nature. See Baldwin v. Board of Supervisors for University of Louisiana System, 08-2359, pp. 22-23 (La.App. 1st Cir.6/30/09), 11 So.3d 1247 (unpublished opinion), writs denied, 09-1917 (La.12/18/09), 23 So.3d 947, and 09-1919 (La.12/18/09), 23 So.3d 948, cert. denied, 560 U.S. 926, 130 S.Ct. 3330, 176 L.Ed.2d 1222 (2010).
Following remand to the trial court, all claims against Mr. Schexnayder were dismissed in a judgment signed on October 5, 2011, by joint stipulation of the parties. Thereafter, the remaining defendants filed motions for summary judgment, seeking dismissal of Mr. Baldwin’s claims for abuse of right, intentional interference with contract, intentional and negligent infliction of emotional distress, breach of contract, and racial discrimination. The trial court denied the motion for summary judgment on Mr. Baldwin’s claim for racial discrimination, but granted separate summary judgments to dismiss Mr. Baldwin’s claims for abuse of right, intentional interference with contract, intentional and negligent infliction of emotional distress, and breach of contract.[2] Herein, Mr. Baldwin ^appeals the summary judgment dismissing his breach of contract claim.[3]
STANDARD OF REVIEW
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, *653 and admissions on file, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Guardia v. Lakeview Regional Medical Center, 08-1369, p. 3 (La.App. 1st Cir.5/8/09), 13 So.3d 625, 628. A trial court cannot make credibility decisions on a motion for summary judgment. Monterrey Center, LLC v. Education Partners, Inc., 08-0734, p. 10 (La.App. 1st Cir.12/23/08), 5 So.3d 225, 232. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Guardia, 08-1369 at p. 4, 13 So.3d at 628.
As discussed by this court in Boh Bros. Construction Co., L.L.C. v. State ex rel. Department of Transportation and Development, 08-1793, pp. 3-5 (La.App. 1st Cir.3/27/09), 9 So.3d 982, 984-85, writ denied, 09-0856 (La.6/5/09), 9 So.3d 870 (case citations omitted), the following rules govern our review of this contractual dispute:
When parties are bound by a valid contract and material facts are not in conflict, the contract’s application to the case is a matter of law and summary judgment would be appropriate.
[[Image here]]
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. La. Civ.Code art.2045[.] This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. La. Civ.Code art.2046[.]
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search' of the parties’ intent. La. Civ.Code art.2046[.] The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. La. Civ. Code art.2046, comment (b)[J
To determine the meaning of words used in a contract, a court should give them their “generally prevailing meaning.” La. Civ.Code art.2047. If a word is susceptible of different meanings, it “must be interpreted as having the meaning that best conforms to the object of the contract.” La. Civ.Code art. 2048. “A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.” La. Civ.Code art.2049. Furthermore, every “provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” La. Civ.Code art.2050. Moreover, in the *654 interpretation of contracts, the specific controls the general.
With these rules of contract interpretation and summary judgment practice in mind, we review de novo the provisions of the contract.
DISCUSSION
In this appeal, Mr. Baldwin asserts that the trial court erred in finding that the defendants did not terminate the employment contract and, therefore, did not | ^violate or breach the notice clause contained in the contract. The termination provision in the contract provides, in pertinent part:
11. TERMINATION
Either party may terminate this agreement without just cause prior to the expiration of its terms by giving thirty (30) days written notice to the other party. Should the [Board] terminate this agreement without just cause, it shall be liable to Jerry Lee Baldwin for liquidated damages in the amount of the remaining base salary at the time of termination under the terms of the agreement. Liquidated damages shall be computed as the number of months remaining under the terms of the agreement as specified in Section 2, times the amount of the monthly installments specified in Section 3. The [Board] shall not be liable for any payment of contingent premium benefits or car allowance past the effective termination. Payments for liquidated damages shall be made monthly by the [Board]. [Emphasis added.]
The parties as well as the trial court acknowledged that the Board paid Mr. Baldwin all amounts owed as “stipulated damages,” in accordance with the terms of the contract;[4] however, according to the plain language of the contract, the only circumstance for which the Board would be liable to Mr. Baldwin for liquidated damages is “[s]hould the [Board] terminate this agreement without just cause.” (Emphasis added.) Thus, the Board’s payment of liquidated damages is an acknowl-edgement that the contract was “terminated” without just cause. Accordingly, we find that the trial court legally erred in interpreting the employment contract otherwise.
Moreover, without question, 30-day written notice was not provided to Mr. Baldwin prior to the termination of the contract. The only written notice provided jrto Mr. Baldwin was a letter dated November 27, 2001, advising Mr. Baldwin that he was relieved of his coaching duties effective November 26, 2001. Therefore, considering the' evidence presented and the plain language of the contractual provision at issue, we find that the trial court erred in finding that the defendants did not breach the notice clause contained in *655 the termination provision of Mr. Baldwin’s employment contract. In so finding, we reverse the summary judgment dismissing Mr. Baldwin’s breach of contract claim and remand this matter to the trial court for further proceedings to determine Mr. Baldwin’s entitlement to damages, if any, sustained by him as a result of the defendants’ breach of the notice clause to the termination provision in the employment contract. See Andrepont v. Lake Charles Harbor and Terminal District 602 So.2d 704, 708-09 (La.1992); Inabnet v. Pan American Life Insurance Company, 267 So.2d 774, 778-79 (La.App. 2d Cir.), writ denied, 268 La. 613, 268 So.2d 675 (1972). All costs of this appeal, in the amount of $1,627.50, are assessed to the Board of Supervisors for the University of Louisiana System.
REVERSED AND REMANDED.

. At the time of his employment, ULL was known and referred to in the contract as the University of Southwestern Louisiana.

. The trial court dismissed Mr. Baldwin's claims for intentional interference with contract and intentional infliction of emotional distress pursuant to Mr. Baldwin's stipulation to dismiss these claims.

. A rule to show cause order was issued, ex proprio motu, by this court questioning whether the judgment is final and appealable pursuant to La. C.C.P. art. 1915(B). By an order signed on September 20, 2012, the trial court granted Mr. Baldwin’s motion to certify the judgment as final and appealable pursuant to La. C.C.P. art. 1915(B), but did not give express reasons for granting the motion to designate the summary judgment as final. However, for the reasons expressed in Baldwin v. Board of Supervisors for University of Louisiana System, 06-961, pp. 3-5 (La.App. 1st Cir.5/4/07), 961 So.2d 418, 420-21, we find the matter is properly before us as a final judgment, and accordingly, we recall the rule to show cause.

. In the third paragraph of their reconven-tional demand, the defendants asserted, "[p]ursuant to Paragraph 11 of his employment contract, since Jerry Lee Baldwin secured full time employment prior to the expiration of his contract, Plaintiffs-in-Re-convention are entitled to a reduction, credit, and/or reimbursement in the amount of liquidated damages paid to Jerry Baldwin pursuant to the terms of his employment contract. Said reduction should be in an amount equal to the amount of income earned by Jerry Lee Baldwin prior to January 31, 2003.” Further, in written and oral argument presented to the trial court and this court, the Board has repeatedly acknowledged that it paid Mr. Baldwin liquidated damages in accordance with the terms of the contract. Additionally, in its reasons for judgment, the trial court expressly found that "[t]he plaintiff was paid in full pursuant to the terms and conditions of the contract, including stipulated damages.” See also La. C.C. art. 1853.