# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #051

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of October, 2014**, are as follows:

**BY WEIMER, J.:**

2014-C -0827        JERRY LEE BALDWIN v. THE BOARD OF SUPERVISORS FOR THE UNIVERSITY
                    OF LOUISIANA SYSTEM, THE UNIVERSITY OF LOUISIANA AT LAFAYETTE,
                    AND NELSON SCHEXNAYDER, INDIVIDUALLY, AND IN HIS CAPACITY AS
                    DIRECTOR OF ATHLETICS FOR THE UNIVERSITY OF LOUISIANA AT
                    LAFAYETTE (Parish of E. Baton Rouge)

                    Accordingly, the decision of the court of appeal is reversed and
                    vacated, and the judgment of the trial court granting summary
                    judgment in favor of defendants and dismissing Baldwin's claim
                    for breach of contract is reinstated.  This matter is remanded to
                    the trial court for further proceedings.
                    REVERSED AND VACATED; TRIAL COURT JUDGMENT REINSTATED; REMANDED.

                    JOHNSON, C.J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-0827

## JERRY LEE BALDWIN

### VERSUS

## THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM, THE UNIVERSITY OF LOUISIANA AT LAFAYETTE, AND NELSON SCHEXNAYDER, INDIVIDUALLY, AND IN HIS CAPACITY AS DIRECTOR OF ATHLETICS FOR THE UNIVERSITY OF LOUISIANA AT LAFAYETTE

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FIRST CIRCUIT, PARISH OF EAST BATON ROUGE*

**WEIMER**, Justice

This matter involves a breach of contract claim by a head football coach who was relieved of his head coaching responsibilities at a state university, yet was paid the full contractual amount plus benefits. Defendants seek review of the court of appeal's determination that the coach's contract had been terminated, which triggered the contractual obligation to provide notice. Interpreting the contract in its entirety, we find that the appellate court erred in finding that the failure of notice constituted a breach of contract under the facts of this case. Accordingly, we reverse the appellate court's decision and reinstate the summary judgment rendered by the trial court, which dismissed the coach's breach of contract claim against defendants.[1]

---

[1] This decision applies to the breach of contract claim only and has no bearing on any other outstanding claim between the parties that is not currently before this court.

## FACTS AND PROCEDURAL HISTORY

On December 11, 1998, Jerry Lee Baldwin (Baldwin) entered into a written agreement with the Board of Supervisors for the University of Louisiana System (Board). Pursuant to the contract, the Board employed Baldwin as the head football coach at the University of Southwestern Louisiana, now University of Louisiana at Lafayette (UL). The contract provided that Baldwin's employment with UL would last until January 31, 2003. By letter dated November 27, 2001, Baldwin was "relieved of [his] duties" as UL's head coach effective November 26, 2001, after winning only six of twenty-seven games, a win record of 18 percent. Afterwards, Baldwin continued to receive his full monthly salary and other employee benefits from UL including health insurance, accrual of leave time, and accrual of retirement credits for the remainder of the contract term.

On July 21, 2003, Baldwin filed a petition for damages for breach of contract[2] against the Board and UL (collectively defendants), alleging, in pertinent part, that his termination was in violation of his contract as he was not given the notice required by Section 11 of the contract.[3] Section 11 of the contract governs termination and provides:

11. TERMINATION

Either party may terminate this agreement without just cause prior to the expiration of its terms by giving thirty (30) days written notice to the other party. Should the University terminate this agreement without

---

[2] Baldwin sought damages for tortious interference with a contract, abuse of rights, and intentional and/or negligent infliction of emotional distress, as well as unpaid wages. Reportedly, his petition was later amended to assert a claim for racial discrimination. Baldwin's claims for intention interference with a contract, abuse of rights, and intentional and negligent infliction of emotional distress were dismissed by summary judgment. However, his racial discrimination claim remains viable in light of the trial court's denial of the defendants' motion for summary judgment.

[3] Also named as a defendant was Nelson Schexnayder, individually and in his official capacity as athletic director for UL, who was later voluntarily dismissed.

just cause, it shall be liable to Jerry Lee Baldwin for liquidated damages in the amount of the remaining base salary at the time of termination under the terms of the agreement. Liquidated damages shall be computed as the number of months remaining under the terms of the agreement as specified in Section 2, times the amount of the monthly installments specified in Section 3. The University shall not be liable for any payment of contingent premium benefits or car allowance past the effective date of termination. Payments for liquidated damages shall be made monthly by the University.

. . . .

Should Jerry Lee Baldwin's appointment as Head Football Coach at [UL] be terminated during the terms of this agreement, he shall make reasonable efforts to obtain suitable full time gainful employment in the Division I-A coaching profession. Should Jerry Lee Baldwin secure full time employment of any type, the liquidated damages described in this agreement shall be reduced by the amount of income received by him from said employment. Failure by Jerry Lee Baldwin to make reasonable efforts to secure full-time employment as described above shall be cause for the release of the University from any obligation to make further payments.

Should Jerry Lee Baldwin's employment be terminated for just cause, the University shall not be liable for any payment or benefits specified in this agreement past the effective date of termination. Just cause for termination shall include but not be limited to arrest or charges for violations of Federal, State or local laws, sanctions for violations of NCAA or Conference regulations, or violations of University policies and regulations. Just cause shall not include misdemeanor traffic tickets.

Notably, Section 11 references termination of the contract in paragraph one, termination of his appointment as head football coach in paragraph three, and termination of employment in paragraph four.

Section 2 of the contract provides the term, and Section 3 sets forth Baldwin's base salary–an annual salary to be paid by UL in equal monthly installments. Baldwin's entitlement to employee benefits is addressed in Section 4, which provides: "Jerry Lee Baldwin shall participate in the mandatory benefit plan and be eligible for optional employee plans as would any other University unclassified employee." Additional benefits and compensation are addressed in Sections 5 through 8 of the

3

contract, which govern contingent premium benefits, incentive compensation, outside income, and apparel/equipment endorsements.

Following the court of appeal's vacatur of a sizable jury verdict in favor of Baldwin due to "more than one consequential error that interdicted the fact finding process,"[4] defendants, on remand, filed a motion for summary judgment on Baldwin's breach of contract claim. In their supporting memorandum, defendants set forth the following alternative arguments to show entitlement to judgment as a matter of law:

- it is undisputed that Baldwin received the stipulated damages provided for in the contract (even though UL could have legitimately contested its obligation to pay stipulated damages), so Baldwin cannot be entitled to any additional contract damages;

- the notice provision doesn't apply when the contract is not terminated, and Baldwin's contract was never terminated because he admits he received full employee benefits including his salary throughout the entire term of his contract;

- the "notice" provision doesn't apply if the termination was for "just cause," and the cases hold that Baldwin's 18% winning percentage constitutes just cause for terminating a coach's contract;

- even if the notice provision applied, an employee's sole remedy under a notice provision is payment for the term of the notice period, and it is undisputed that Baldwin was paid for the notice period (and 13 months beyond that);

- neither the notice provision nor any other provision in the contract governs the timing of UL's announcement of its decision to replace Baldwin; and

- there is no evidence that Baldwin was damaged by the timing of UL's announcement.

---

[4] **Baldwin v. Board of Sup'rs for University of Louisiana System**, 08-2359 (La.App. 1 Cir. 6/30/09), 11 So.3d 1247 (unpublished opinion), writs denied, 09-1917, 09-1919 (La. 12/18/09), 23 So.3d 947, 948, cert. denied, 560 U.S. 926 (2010).

Initially, defendants urged that, because Baldwin was paid in full pursuant to the terms of the contract, defendants fully performed their contractual obligations, and Baldwin is not entitled to damages under the contract. In other words, because he received what he would have been entitled to as stipulated or liquidated damages in the event the contract had been breached, Baldwin does not have a basis for a contract claim. Alternatively, defendants submitted that the notice provision was never triggered because the contract with Baldwin had never been terminated. Although UL removed Baldwin from the position of head coach, UL retained him as a payroll employee. Undisputedly, defendants paid Baldwin's salary and employment benefits (health insurance, accrual of leave time, and accrual of retirement credits) for the entire term of the contract.

After a hearing on defendants' motion for summary judgment on Baldwin's breach of contract claim, the trial court found that the terms of the contract were unambiguous. The trial court further found that upon being relieved of his head coaching duties, Baldwin remained an employee of UL. Therefore, "defendants did not terminate plaintiff's contract." Absent a termination of the contract, defendants were not contractually obligated to provide notice. The trial court further found that there was "no material evidence in dispute concerning plaintiff's damages," as the record "clearly shows that the plaintiff was paid and/or compensated every dime he was owed in accordance with the terms of his contract." Accordingly, the trial court found that no genuine issue of material fact existed as to whether Baldwin could "prove the essential elements of his breach of contract claim." Baldwin's claim for breach of contract was dismissed with prejudice via summary judgment in favor of defendants.

5

On appeal of that summary judgment, the court of appeal found that Baldwin had set forth a legitimate claim for breach of contract based on defendants' failure to adhere to the notice provision in Baldwin's employment contract. **Baldwin v. Board of Sup'rs for University of Louisiana System**, 13-0602, pp. 6-7 (La.App. 1 Cir. 2/7/14), 138 So.3d 650, 654. This finding was based on the appellate court's conclusion that defendants' payment of liquidated damages to Baldwin was an acknowledgement that it terminated Baldwin's contract without just cause. *Id.* Accordingly, the trial court's judgment was reversed, Baldwin was awarded appeal costs, and the matter was remanded for a determination of the amount of damages, if any, owed to Baldwin for the breach of contract claim. *Id.*, 13-0602 at 7, 138 So.3d at 655. Defendants sought review by this court, which was granted. **Baldwin v. Board of Sup'rs for University of Louisiana System**, 14-0827 (La. 6/20/14), 141 So.3d 275.

## DISCUSSION

To succeed, Baldwin must show that there has been a breach of the terms of the contract. The term allegedly breached was the thirty-day notice provision. For the notice obligation in Section 11 (quoted *supra*) to have been triggered, UL must have terminated the "agreement without just cause." As a result of being relieved of his duties as head football coach, Baldwin urges that his employment with UL and the contract were terminated giving rise to UL's notice obligation under Section 11.

The resolution of the merits of Baldwin's argument involves an interpretation of the contract, which has the effect of law between the parties. See La. C.C. art. 1983. The responsibility of the judiciary in interpreting contracts is to determine the common intent of the parties. See La. C.C. art. 2045. Courts begin their analysis of the parties'

6

common intent by examining the words of the contract itself. <u>See</u> La. C.C. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). Furthermore, a contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. <u>See</u> La. C.C. art. 2050. One provision of the contract should not be construed separately at the expense of disregarding other provisions. **Sims v. Mulhearn Funeral Home, Inc.**, 07-0054, p. 8 (La. 5/22/07), 956 So.2d 583, 589, <u>citing</u> La. C.C. art. 2050.

Reading the provisions of the contract in its entirety, we, like the trial court, reject the idea that UL's release of Baldwin from his duties as head coach resulted in a termination of the contract. Section 12 of the contract, titled "ACKNOWLEDGEMENTS," provides:

> The parties specifically agree that the obligations assumed herein relate only to the obligations regarding payment and there is no guarantee or promise of continued employment for Jerry Lee Baldwin at the University of Southwestern Louisiana whether as head football coach or in any other employment capacity.

Based on the parties' "acknowledgements" in Section 12, UL was "obligat[ed] regarding payment," but there was no "guarantee or promise of continued employment" as head coach for the term of the contract. Consistent with Section 12, paragraphs three and four of Section 11 of the contract contemplate a distinction between the termination of his appointment as head coach and the termination of employment.[5] Consequently, UL was free to relieve Baldwin of his head coaching duties without terminating the contract, so long as UL fulfilled its "obligations

---

[5] In part, the contract provides in paragraphs three and four of Section 11: "Should Jerry Lee Baldwin's appointment as Head Coach at [UL] be terminated ..." and "Should Jerry Lee Baldwin's employment be terminated ...." <u>See</u> full text of these paragraphs, *supra*.

regarding payment." Absent a termination of the contract, the trial court correctly found that the notice provision found in paragraph one of Section 11 of the contract was never triggered. In finding that UL's fulfillment of the payment obligation constituted an acknowledgement of its breach, the appellate court focused on Section 11 of the contract and disregarded the clear terms of Section 12.

Furthermore, UL's continued payment of Baldwin's salary was also accompanied with other benefits of employment, such as health insurance, accrual of leave time, and accrual of retirement credits in accordance with Section 4 of the contract. Thus, Baldwin remained a paid employee of UL in a capacity other than as head coach as contemplated by Section 12. Had the contract been completely terminated, Baldwin would not have been entitled to receive employee benefits. By continuing to pay Baldwin as an employee of UL, defendants fulfilled the obligations under the contract.[6]

## CONCLUSION

For the foregoing reasons, we find that the appellate court erred as a matter of law[7] in failing to give effect to Section 12 of the contract, in concluding that the contract had been terminated based on its finding that an alternative argument presented by defendants constituted an acknowledgement of payment of liquidated damages,[8] and in holding that defendants breached the contract by failing to give the

---

[6] There was no "coaching purgatory" as argued by Baldwin; Baldwin was not obligated to stay at UL. By leaving UL, Baldwin would relinquish his claim to the continued payment of his salary and benefits. He chose to stay and collect the salary and benefits.

[7] See **Sims**, 07-0054 at 10, 956 So.2d 590 ("[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.").

[8] See **Baldwin**, 13-0602 at 6, 138 So.3d at 654; see also La. C.C. art. 1853 (a judicial confession is a "declaration made by a party in a judicial proceeding … [which] constitutes full proof against the party who made it."). The contention by defendants that stipulated damages were paid was an alternative legal argument, not a judicial confession.

notice required by Section 11. Since the contract did not guarantee Baldwin continued employment as UL's head football coach for the duration of the term of the contract, defendants acted within their contractual rights in relieving Baldwin of his coaching duties, while maintaining him as a payroll employee. Accordingly, the trial court correctly found that defendants were entitled to summary judgment on Baldwin's breach of contract claim on the basis of the clear and unambiguous language of the contract.

Accordingly, the decision of the court of appeal is reversed and vacated, and the judgment of the trial court granting summary judgment in favor of defendants and dismissing Baldwin's claim for breach of contract is reinstated. This matter is remanded to the trial court for further proceedings.

**REVERSED AND VACATED; TRIAL COURT JUDGMENT REINSTATED; REMANDED**.

**SUPREME COURT OF LOUISIANA**

**NO. 2014-C-0827**

**JERRY LEE BALDWIN
VS.
THE BOARD OF SUPERVISORS FOR THE
UNIVERSITY OF LOUISIANA SYSTEM, THE
UNIVERSITY OF LOUISIANA AT LAFAYETTE,
AND NELSON SCHEXNAYDER, INDIVIDUALLY,
AND IN HIS CAPACITY AS DIRECTOR OF
ATHLETICS FOR THE UNIVERSITY OF
LOUISIANA AT LAFAYETTE**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**JOHNSON, C.J**., dissents and assigns reasons.

In my view, the court of appeal correctly determined that Mr. Baldwin has set forth a valid claim for breach of contract based on defendants' failure to adhere to the notice provision in the employment contract.

The majority suggests breach of the thirty-day notice requirement is of no moment, finding that because salary and benefits were paid for the contacted term, there was no termination of the contract. I disagree. The employment contract set forth the terms under which Mr. Baldwin would perform the duties and services of head football coach. To relieve Mr. Baldwin of all duties under the employment contract cannot be characterized as anything other than termination. The majority's conclusion that payment of salary and benefits under the contract prohibits a finding that Mr. Baldwin was terminated presumes there are no other damages attendant to loss of employment.

I would affirm the decision of the court of appeal which reversed the summary

judgment, and remand the matter to the trial court to allow Mr. Baldwin to present evidence to support his claim for any additional damages caused by defendants' breach of the notice provision, such as loss of future employment opportunities, or damage to his reputation.