WILLIAMS, C.J.
*1221 The plaintiff, Sand Beach Properties, LLC, appeals a judgment granting summary judgment in favor of the defendants, City of Shreveport, William Bradford, Brian Crawford and Barbara Featherston, and denying the plaintiff's motions for partial summary judgment on the issues of breach of contract and misappropriation of trade secrets. For the following reasons, we affirm.
FACTS
In January 2015, the Shreveport City Council adopted an ordinance establishing new rates for residential water use based on a tiered structure. Under the ordinance, tier 1 included 0-3,000 gallons of water usage billed at $1.32 per 1,000 gallons; tier 2 was 4,000-7,000 gallons of water billed at $2.63 per 1,000 gallons; tier 3 was 8,000-14,000 gallons of water billed at $3.95 per 1,000 gallons; and tier 4 included water use above 14,000 gallons billed at $4.47 per 1,000 gallons. However, an error in the implementation of the new system caused the tier 2 rate to be incorrectly applied to usage from 4,000 through 10,000 gallons; the tier 3 rate was applied to usage from 11,000 through 24,000 gallons; and the tier 4 rate applied to use above 24,000 gallons. As a result, some customers were charged a lower rate than required by the ordinance.
Sharon Pilkinton, the Superintendent of Customer Service for the Shreveport Department of Water and Sewerage, was responsible for implementing the changes in the water billing system in conformity with the ordinance. She was assisted by Bill Farmer, an employee of Systems and Software, the company hired by the City of Shreveport ("City") to install the new tiered rates into the billing software.
In March 2015, the City issued the first water bills under the ordinance. That same month, Pilkinton was informed by a residential water customer that the bill had not been calculated correctly. After reviewing the bill with the customer, Pilkinton determined that the new billing rates had been calculated incorrectly. On March 30, 2015, she sent an email to Bill Farmer advising him that there was an error in the billing rate and pointing out what the amount should have been under the correct calculation. Although Pilkinton was aware that the calculation of the rates charged for water consumption was incorrect, the City continued to issue water bills reflecting the same error throughout 2015 and into 2016.
After receiving his water bill in March 2015 and comparing it to the new tier rates issued by the City, Scott Pernici noticed there seemed to be an error in his bill and that of his neighbor. Pernici did not contact the City at that time, but spent the next several months gathering and reviewing the water bills sent to a number of other customers. Pernici determined that some of the bills were incorrect and as a result, residential customers using 8,000 gallons of water or more were billed at a lower rate than required under the ordinance. Pernici discussed this billing error with his friend, attorney Michael Wainwright. In August 2015, they hired Manchac Consulting Group, Inc. ("Manchac"), a company with experience in municipal water systems, to review Pernici's findings. Pernici and Wainwright required the CEO of Manchac, Justin Haydel, to sign a confidentiality agreement before giving him the water billing information, which they believed could be of value. Haydel confirmed *1222 that the water bills that he was shown had been calculated incorrectly. Believing that they could obtain payment from the City for this information, Pernici and Wainwright hired attorney Charles Grubb to negotiate with the City.
In March 2016, attorney Grubb contacted City Attorney William Bradford. Grubb represented that his client possessed "confidential information" which could provide the City with increased revenue without enacting new taxes or fees. City Attorney Bradford advised Grubb that the City would need some disclosure regarding the nature of the information. Attorneys Wainwright and Grubb then drafted a nondisclosure agreement ("NDA"), which provides that Manchac (the "company") would provide confidential information to the City ("recipient") for the purpose of considering contracting with the company to identify areas for realizing additional revenue. Manchac requested that any of its confidential proprietary or trade secret information ("confidential information") provided be "treated and maintained as confidential to the extent permitted by Louisiana law." The term "confidential information" is defined as all "data and information contained in any tangible or intangible form ... provided by company to recipient relating to operational, technical, financial or other affairs of recipient's business activities previously unknown" to the City.
On April 21, 2016, City Attorney William Bradford signed the NDA. Haydel then gave a PowerPoint presentation to Bradford showing that the City's billing for water usage was incorrect and stating what the billing should be under the ordinance. Haydel gave Bradford a paper copy of the PowerPoint and a proposed "revenue enhancement agreement," whereby the City would pay a percentage of any additional revenue received by implementing Manchac's recommendations. On June 8, 2016, Haydel and attorney Grubb met with Bradford, Shreveport Chief Administrative Officer Brian Crawford and Barbara Featherston, director of the City's Water and Sewerage Department. After Crawford and Featherston signed an acknowledgment of the NDA, Haydel again made the PowerPoint presentation. The next day, Featherston sent an email regarding the billing error to Pilkinton and instructed her to research the situation and respond. In July 2016, Featherston informed Haydel that the City had corrected the billing error so that future water bills would be accurate. The City later offered to pay attorney Grubb's client 10% of the amount of the revenue that was uncollected because of the City's billing error.
At some point, Manchac assigned any rights it held under the NDA to Pernici and Wainwright, who are principals of Sand Beach Properties, LLC ("Sand Beach"). Pernici and Wainwright then assigned their rights acquired from Manchac to Sand Beach. In October 2016, the plaintiff, Sand Beach, filed a petition for breach of contract against the City. The plaintiff later amended the petition to add William Bradford, Brian Crawford and Barbara Featherston as defendants. The City filed an exception of no cause of action alleging that the NDA could not be used to prevent the City from correcting the billing error. The district court denied the exception.
In October 2017, plaintiff filed a motion for partial summary judgment as to the City's liability for breach of contract and a motion for partial summary judgment on the issues of misappropriation of trade secrets and breach of confidence. The City and the individual defendants filed a motion for summary judgment alleging that the information contained in the PowerPoint was already possessed by the City *1223 through Pilkinton's knowledge of the water billing problem in March 2015. After a hearing, the district court found that Pilkinton's email to Farmer showed that she was aware of the billing error and of the correct amount that should have been billed under the ordinance as of March 2015. The trial court rendered judgment granting the defendants' motion for summary judgment and denying the plaintiff's motions for partial summary judgment. Plaintiff appeals the judgment.
DISCUSSION
The plaintiff contends the trial court erred in granting summary judgment in favor of the defendants. Plaintiff argues that the City should not have been allowed to claim knowledge of the billing error information at summary judgment because the City previously made a judicial confession in pleadings that it did not know the information.
A judicial confession is a declaration made by a party in a judicial proceeding. The confession is full proof against that party. La. C.C. art. 1853. To constitute a judicial confession the statement must be the express acknowledgment of an adverse fact. Additionally, the adverse party must have believed the fact was no longer at issue or relied on it to his detriment for the statement to be a judicial confession. State v. Lamb , 31,919 (La. App. 2 Cir. 5/7/99), 732 So.2d 1270.
First, we note that the City's answer and exception refer to unknowingly violating an ordinance and do not expressly state that certain information was unknown. Second, the record also shows that the City filed its amended exception in December 2016 and its answer in May 2017, before Pilkinton's deposition in June 2017, when she testified that she had learned of the billing error in March 2015. Based on this testimony, plaintiff acknowledged in its statement of uncontested facts filed with the motions for partial summary judgment that Pilkinton had previously determined there was a problem with application of the tiered rates and that the City had actual knowledge of the error. Thus, plaintiff has not shown detrimental reliance on a statement that the City did not know about the billing error. Consequently, the record does not support plaintiff's argument that a judicial confession by the City precluded the district court from granting summary judgment in favor of the City. This assignment of error lacks merit.
In the alternative, plaintiff argues that the trial court erred in granting the City's motion for summary judgment because a genuine issue of material fact exists as to whether the City knew the information presented in the Power Point.
A contract is formed by the consent of the parties. La. C.C. art. 1927. In interpreting contracts, the court should determine the common intent of the parties. Baldwin v. Board of Supervisors for the Univ. of La. System , 2014-0827 (La. 10/15/14), 156 So.3d 33. Contractual intent is determined by the words of the contract. Barrera v. Ciolino , 636 So.2d 218 (La. 1994). The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Argonaut Great Central Ins. Co. v. Hammett , 44,308 (La. App. 2 Cir. 6/3/09), 13 So.3d 1209, writ denied , 2009-1491 (La. 10/2/09), 18 So.3d 122. Summary judgment shall be rendered if the motion, memorandum and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a *1224 matter of law. La. C.C.P. art. 966(A)(3). The burden of proof remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter before the court, then the mover is not required to negate every essential element of the adverse party's claim, action or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or defense. The adverse party has the burden to produce factual support to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
In the present case, we shall assume the NDA is a valid contract solely for the purpose of summary judgment. The NDA addresses "confidential information," which is defined as "information contained in any tangible or intangible form ... provided by company to recipient relating to operational, technical, financial or other affairs of recipient's business activities previously unknown" to the City. In addition, paragraph 6 of the NDA provides that the agreement shall not "deprive recipient of the right to use or disclose any information (a) which is possessed by recipient before receipt thereof [.]"
In her deposition, Sharon Pilkinton testified that in March 2015 she was informed by a customer that the person's water bill did not seem to have been calculated correctly. After reviewing the bill, Pilkinton saw that the tiered billing rates had been applied incorrectly. Pilkinton stated that she sent an email to Bill Farmer, an employee of Systems and Software, using an example of 17,000 gallons of usage that showed how the bill had been incorrectly calculated and showed how the bill should have been properly calculated. Pilkinton then spoke with Farmer on the telephone and asked him to place the correct rates in production, but this was not done. Pilkinton testified that after their phone call she never followed up to make sure the tiered rates had been corrected. Pilkinton stated she did not know why she did not inform Featherston of this problem at the time. Pilkinton testified that she felt a sinking feeling when she saw Featherston's June 2016 email noting that there was a problem with the tiered water rates in the billing system and realized the error had not been corrected. Pilkinton stated that she contacted Systems and Software for help in changing the tier rates in the system and on June 13, 2016, a Systems and Software employee explained how to correct the rate structure. Pilkinton testified that Featherston's email noting that tier 2 rates had been applied to usage of up to 10,000 gallons and tier 3 rates had been applied to usage of up to 24,000 gallons was the same type of problem she had seen in March 2015 and was not new information. Pilkinton stated she never saw the PowerPoint information.
Scott Pernici testified in deposition as follows: in March 2015, his water bill seemed incorrect when compared with the new tiered rates issued by the City; his neighbor's bill also seemed incorrect; he gathered additional water bills and using the tiered rate structure issued to the public by the City he saw that some bills were correct and some were incorrect and thought something was wrong; it took him a period of time to gather enough bills to specify the "break point" between correct and incorrect bills because he needed to wait for the City to issue the monthly water bills; he reviewed water bills in various increments of usage and the rates stated in the ordinance and performed numerous mathematical calculations to determine that the bills for 7,000 gallons of water usage and below were correct and the bills for 8,000 gallons of usage and above were incorrect; he did not look at *1225 the City's enQuesta billing software and does not know how that software works; Haydel was not hired to show him how to fix the billing error; he told Haydel that Manchac might need to handle a software issue to make a correction for the City and Haydel thought his company could "figure it out."
In his deposition, Justin Haydel testified as follows: he is a civil engineer and co-owner of Manchac; in August 2015, Pernici showed him "several water bills" and there was an error in the bills he was shown, but he would have needed more information to determine the extent of the problem; he had "no idea" what would be required to correct the billing error or what changes would need to be implemented to correct the error; he did not tell any city official how to correct the billing error.
Plaintiff asserts in its brief that the PowerPoint, by simply showing the specific usage levels to which the tiered rates were incorrectly applied, gave the City a "method" to fix the billing error. Plaintiff also alleges that even if the City had knowledge of the error, it did not know how to correct the problem until it received the PowerPoint. Contrary to plaintiff's assertion, the PowerPoint's specification of where the error occurred demonstrated the problem, not the method for resolving the billing error. A review of the PowerPoint shows that the information being disclosed involved (1) the way the ordinance was being applied to each 1,000-gallon billing increment at the time and (2) the way the ordinance should have been applied to each billing increment. There is no disclosure of how to correct the error. Haydel, the person who gave the PowerPoint presentation, specifically acknowledged that he did not know how to fix the billing error and did not communicate a method for correcting the error to the City.
Additionally, Pilkinton's March 2015 email shows that she was aware the tier 2 rate of $2.63 was incorrectly applied to usage up to 10,000 gallons, rather than to the 7,000 gallon level in the ordinance, and the tier 3 rate of $3.95 was incorrectly applied to usage up to 17,000 gallons when the ordinance required that usage increments of more than 14,000 gallons be billed at $4.47. The email demonstrates that Pilkinton previously knew the same information that is displayed in the PowerPoint document on which plaintiff relies.
Pilkinton's knowledge of the incorrect application of the tiered rates in the City's water bills, whether acted upon or not, constitutes knowledge of the City for purposes of the NDA, which defines confidential information as information which the City did not previously know or possess. The City also possessed the ordinance provisions and the contents of the water bills sent to customers, including the rates charged for the various levels of water usage. This information is the basis of the PowerPoint.
Based upon this record, there is no showing that the City used or disclosed confidential information, as this term is defined in the NDA, because the information at issue was previously known and possessed by the City. Thus, the evidence presented supports the conclusion that the City did not breach the NDA.
The plaintiff contends the district court erred in denying plaintiff's motions for partial summary judgment. Plaintiff argues that the City's use of the confidential information to correct the billing error was the misappropriation of a trade secret.
A trade secret is information, including a formula, pattern, compilation or method that derives independent economic value from not being generally known and not being readily ascertainable by other persons who can obtain economic value *1226 from its use and is subject to reasonable efforts to maintain its secrecy. La. R.S. 51:1431(4). The Louisiana Uniform Trade Secrets Act ("LUTSA") defines misappropriation of a trade secret as the disclosure or use of another's trade secret without consent by a person who used improper means to acquire the secret or who knew that his knowledge of the trade secret was acquired while under a duty to maintain its secrecy or from a person owing such a duty. La. R.S. 51:1431(2). Under LUTSA, recovery for misappropriation of trade secrets requires proof that (1) the information is a legally protected trade secret, (2) an express or implied contractual relationship existed between the parties obligating the receiver not to disclose the information and (3) the receiving party wrongfully misappropriated the information to the plaintiff's detriment. Bihm v. Deca Systems, Inc. , 2016-0356 (La. App. 1 Cir. 8/8/17), 226 So.3d 466. If the principal person who can obtain economic benefit from the information is aware of it, there is no trade secret. Comment ( e), La. R.S. 51:1431.
In the present case, as previously discussed, the City was already aware of the information at issue. Since the City is the principal entity which could obtain economic benefit from the information regarding the billing error, the City's knowledge of this information means there is no protected trade secret. In addition, pursuant to the contract between the parties, the City was not precluded from using the information at issue because that information was not confidential as defined by the NDA. Further, the PowerPoint was derived from data maintained and published by the City. There would have been no numbers for Pernici to calculate without the water bills issued by the City. Based on the evidence presented, the record does not support plaintiff's contention that the PowerPoint information was a legally protected trade secret. Thus, this assignment of error lacks merit.
The plaintiff contends the trial court erred in denying plaintiff's motion for partial summary judgment as to breach of contract. As stated above, we assume that the NDA is a valid and binding contract solely for the purposes of summary judgment. Based upon our conclusion in the previous discussion that the City did not breach the NDA, this assignment of error lacks merit.
After reviewing this record, we conclude that the district court did not err in granting the defendants' motion for summary judgment and denying the plaintiff's motions for partial summary judgment.
CONCLUSION
For the foregoing reasons, the district court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Sand Beach Properties, LLC.
AFFIRMED.
APPLICATION FOR REHEARING
Before Felicia Toney Williams - Writing, Daniel Milton Moore III, Shonda D. Stone, Jeff Cox, and James Mark Stephens.
Rehearing denied.