McCLENDON, J.
|?In this contract matter, the defendant appeals a default judgment that ordered it to install gas pumps on its leased property. The defendant also appeals the trial court’s alternative award of lost profits and attorney fees in favor of the plaintiff. For the reasons that follow, we reverse in part, amend in part, and, as amended, affirm.
FACTUAL AND PROCEDURAL HISTORY
On January 20, 2010, I Zenith, Inc. (I Zenith), lessor, and Silwad Two, LLC (Sil-wad Two), lessee, entered into a commercial lease of a convenience store located at 6931 Alma Street in Houma, Louisiana. On October 7, 2010, Silwad Two filed a Petition to Enforce Specific Performance or for Damages Resulting from Breach of Contract, seeking to enforce renovation provisions in the contract or, alternatively, for damages for failure to perform. In its petition, Silwad Two asserted that, in accordance with the lease, I Zenith was required to renovate an existing bathroom, install an additional bathroom, install a canopy, provide credit card readers, and complete “pump remediation/replacement,” all of which it had failed to do. Thereafter, Silwad Two obtained a preliminary default judgment, and on April 6, 2011, judgment was rendered against I Zenith, following a hearing to confirm the default. In the judgment, the trial court ordered that I Zenith fulfill the terms of the lease “by completing installation of gas pumps, completing installation of a canopy and completing installation of gas pump card readers” by May 31, 2011. The judgment further ordered the completion of the in *408 stallation of the additional bathroom within 120 days of the signing of the judgment, reasonable attorney fees in the amount of $8,500.00, and costs. Lastly, the judgment provided that if the conditions were not met by the date required, Silwad Two was entitled to an alternative judgment for damages incurred from breach of contract due to lost profits from the date of judicial demand through the end of the lease, at the rate of $.17 per gallon on ^average sales of 1,400 gallons per day for 1,546 days, for a total of $367,948.00.[1]
I Zenith has appealed and assigned the following as error:
1. The trial court erred in finding that the commercial lease required [I Zenith] to install gas pumps.
2. The trial court erred in awarding future lost profits.
3. The trial court erred in awarding an excessive amount of attorney fees.[2]
DISCUSSION
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. La. C.C.P. art. 1702 A. In order for a plaintiff to obtain a default judgment, he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits. Grevemberg v. G.P.A. Strategic Forecasting Group, Inc., 06-0766 (La.App. 1 Cir. 2/9/07), 959 So.2d 914, 917-18.
A plaintiff seeking to confirm a default judgment must prove both the existence and the validity of his claim. Arias v. Stolthaven New Orleans, LLC, 08-1111 (La.5/5/09), 9 So.3d 815, 820. In order to confirm a default judgment when a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. However, the court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment. LSA-C.C.P. art. 1702 B(l).
| furthermore, a default judgment cannot be different in kind from what is demanded in the petition, and the amount of damages must be proven to be properly due. LSA-C.C.P. art. 1703; Arias, 9 So.3d at 820. Although courts recognize a presumption that a default judgment is supported by sufficient evidence, that presumption does not attach when the record upon which the judgment is rendered indicates otherwise. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993). When reviewing default judgments, an appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment. Arias, 9 So.3d at 818.
At the confirmation hearing, Silwad introduced into evidence a copy of the lease agreement, current photographs of the leased premises, and the affidavit of Saeed *409 Mohamed. The oral testimony of Abdel Faraj, Silwad’s owner, was also offered at the hearing.
Paragraph 7 of the commercial lease is entitled “Repairs and Maintenance” and contains the only language in the contract regarding gas pumps. It provides, in pertinent part:
LESSOR warrants that the leased premises are in good condition. LESSEE agrees to keep the premises in good condition during the term of the lease at LESSEE’S expense and to return them to LESSOR in the same condition at the termination of the lease, normal decay, wear and tear excepted.
LESSOR’S obligation to repair shall be limited to necessary repairs to the building roof.
However, LESSOR shall renovate/repair the existing public bathroom and install an additional public bathroom at its sole expense within a [reasonable] time in compliance with regulations of the Parish of Terrebonne. Further, should the in-ground gasoline storage tanks be declared in need of removal by the appropriate governing authority, LESSOR agrees to excavate, remove and replace these tanks at its expense. However, should the tank removal be caused by the failure of LESSEE to provide routine maintenance the tanks as mandated by the Department of Environmental Quality or other governing authority, then LESSEE shall be obligated to bear the full expense of tank removal. In any case, in the event of tank removal, LESSEE shall repave the area above the tanks, re-install pumps, pump islands and any other item made necessary by the excavation which is located above ground level at no expense to LESSOR.
LESSOR shall also provide a canopy . and card readers at its expense.
^Nonetheless, following bathroom renovation, pump remediation/replacement and canopy installation, lessee shall assume responsibility for all repairs and maintenance. LESSEE agrees to obtain all permits and inspections of the underground tanks and other equipment as required by governmental authority.
Mr. Faraj testified at the hearing that he is the owner of Silwad Two and that he entered into the lease with I Zenith for the property in Houma to be used as a gas station. Mr. Faraj stated that the closest gas station was about two and one-half miles away. He was then asked:
Q. In the lease it states that [I Zenith] was supposed to install gas pumps; correct?
A. Yes, sir.
Q. Have they installed those gas pumps?
A. No.
Q. In the lease it states that [I Zenith] was supposed to remediate or replace the underground storage tanks; correct?
A. Yes, sir.
Q. Have they remediated or replaced those tanks.
A. No, sir.
Mr. Faraj also testified that I Zenith was supposed to install a canopy and credit card readers in accordance with the lease, but did not do so. Mr. Faraj was then shown photographs of the leased property, which he stated showed no gas pumps, canopy, or credit card readers. Mr. Faraj also stated that he has managed gas stations for over fifteen years and that a reasonable profit margin on gasoline was about seventeen to twenty cents a gallon. He testified that when he signed the lease, he anticipated selling 1500 gallons of gasoline per day. Mr. Faraj then reviewed the *410 affidavit of Mr. Mohamed, manager of the Texaco gas station 2.6 miles from the property. In his affidavit, Mr. Mohamed stated that his Texaco station sells 1400 gallons of gas per day. Mr. Faraj testified that it should take about two to three weeks to install gas pumps, if the underground tanks were already present. Lastly, Mr. Faraj testified that he |fiwould not have entered into the lease if he knew that I Zenith was not going to install the gasoline pumps.
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. LSA-C.C. art. 1983; Boh Bros. Const Co., L.L.C. v. State ex rel. Dept. of Transp. and Development, OS-1793 (La.App. 1 Cir. 3/27/09), 9 So.3d 982, 984, writ denied, 09-0856 (La.6/5/09), 9 So.3d 870. The interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. Art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. LSA-C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050.
A determination of the existence or absence of an ambiguity in a contract entails a question of law. An appellate review that is not founded upon any factual findings made at the trial court level, but rather, is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. In such cases, appellate review is simply whether the trial court was legally correct. Boh Bros. Const. Co., L.L.C., 9 So.3d at 984; Claitor v. Delahoussaye, 02-1632 (La. App. 1 Cir. 5/28/03), 858 So.2d 469, 478, writ denied, 03-1820 (La.10/17/03), 855 So.2d 764.
I Zenith initially argues that, according to the clear terms of the lease, it was not required to provide gas pumps to Silwad Two. We agree. According to the plain language of the contract of lease, there is no language that requires the lessor to provide gas pumps. The lease is clear as to those things that I |7Zenith agreed to do, including renovation and repair of the existing public bathroom and installation of a canopy and card readers. According to the terms of the contract, if the in-ground storage tanks are declared to be in need of removal, Silwad Two, as the lessee, agreed to repave the area and reinstall the pumps and pump islands. Nonetheless, Silwad Two argued that I Zenith agreed to replace the gasoline pumps and relied on the language “following bathroom renovation, pump remediation/replacement and canopy installation” for its argument. However, looking at Paragraph 7 in toto, we cannot say that the lease requires I Zenith to replace the pumps. The meaning of this provision is clear, that is, following any pump remediation or replacement, Silwad Two is responsible for all repairs and maintenance. See LSA-C.C. art. 2050. There simply is no evidence in the record that I Zenith agreed to install gas pumps, the lease being silent in this regard. Thus, we reverse that portion of the judgment requiring the completion of installation of gas pumps by I Zenith.
The judgment provides for an alternative judgment for damages due to *411 lost profits if the conditions of the lease are not fulfilled by a certain date. The lost profits were calculated based on the lack of gasoline sales. However, because the lease does not require I Zenith to install gas pumps, it was error to award lost profits. Accordingly, we also reverse that portion of the judgment awarding Sil-wad Two future lost profits.[3]
Lastly, we consider whether the amount of attorney fees awarded was reasonable. Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. See Rule 1.5(a) of the Rules of Professional Conduct; State, Dep’t of Transp. and Dev. v. Williamson, 597 So.2d 439, 442 (La.1992); Anglin v. Anglin, 09-0844 (La.App. 1 Cir. 12/16/09), 30 So.3d 746, 752. The trial court has much discretion in fixing an award of attorney fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. Regions Bank v. Automax USA, L.L.C., 02-1755 (La.App. 1 Cir. 6/27/03), 858 So.2d 593, 595, writ denied, 03-2131 (La.11/7/03), 857 So.2d 503.
At the hearing, the only discussion regarding an attorney fee was counsel’s mention of “reasonable attorney fees,” Counsel had a judgment prepared, after which there was discussion off the record. Judgment was signed for $8,500 in reasonable attorney fees. No evidence was produced showing the time spent by Silwad Two’s attorney in this matter. However, this case involved only the filing of a petition, a motion for preliminary default, and a hearing to confirm the default judgment. At the hearing, there was only one witness, who testified briefly, as shown by less than seven pages of transcribed testimony. We find the court abused its discretion in awarding $8,500 in attorney fees, and we will amend the judgment to award $1,500 in attorney fees.
CONCLUSION
For the foregoing reasons, we reverse that portion of the judgment ordering the installation of gasoline pumps. We also reverse that portion of the judgment ordering an alternative judgment for future lost profits in damages. Additionally, we amend the judgment to reduce the award of attorney fees to $1,500. In all other respects, the judgment is affirmed. Costs of this appeal shall be assessed to Silwad Two.
JUDGMENT REVERSED IN PART, AMENDED IN PART, AND, AS AMENDED, AFFIRMED.

. The 1,546 number represents the number of days from the date of judicial demand through the end of the lease, or October 7, 2010 through December 31, 2014.

. The lease provides for attorney fees in Paragraph 16, as follows: “If an attorney is employed to protect any right of LESSOR or LESSEE arising under this lease, the party whose fault necessitates such employment shall pay reasonable attorney's fees to the other.”

. Louisiana courts require that a judgment be precise, definite and certain. See Vanderbrook v. Coachmen Industries, Inc., 01-0809 (La.App. 1 Cir. 5/10/02), 818 So.2d 906, 913. In this matter, the alternative judgment is not certain, being based on subsequent events.