McClendon, J.
lain this contract dispute, the defendant appeals a trial court judgment that granted the plaintiffs motion for summary judgment and denied its cross-motion for summary judgment. For the following reasons, we reverse and render.
FACTUAL AND PROCEDURAL HISTORY
On November 25,2000, Waterworks District No. 1 of DeSoto Parish (Waterworks District), and the Louisiana Department of Public Safety and Corrections (Department), entered into a twenty-year “Water Purchase Contract,” which provided that Waterworks District would install, at its expense, an eight-inch diameter water transmission main to Forcht-Wade Correctional Center (Correctional Center) in Caddo Parish. The Waterworks District also agreed to furnish to the Correctional Center potable treated water as required by the Correctional Center up to 80,000 gallons per day. As for the Correctional Center, it agreed to make monthly pay *3 ments to the Waterworks District in the amount of $2,740.00 per month, together with $2.25 per thousand gallons of water furnished. The contract further provided that if the Waterworks District was unable, for any reason, to supply the water needed by the Correctional Center for thirty consecutive days, the Correctional Center had the right, at its option, to cancel the contract. Additionally, the contract provided that in the event the Correctional Center failed to pay to the Waterworks District the amount due within ten days of invoice, a penalty of ten percent of the amount due would be assessed and that nonpayment within thirty days from the invoice date would result in the water being shut off and would give the Waterworks District the option to cancel the contract.
The water main was installed and water was provided and paid for according to the terms of the contract for approximately twelve years. However, on December 3, 2012, the Waterworks District’s Administrator, John Neilson, sent a letter to Warden Goodwin at the Correctional Center advising him that the Correctional Center was behind on its payments. In response, the Department sent a letter to Mr. Neil-son on December 21, 2012, stating that “[d]ue to the closure of the Forcht-Wade Correctional Center, it has been determined to be in the best interest of the [Department] to cancel lathe ... contract effective December 31, 2012.” The Department did not remit any further payments to the Waterworks District.
By letter dated June 20, 2013, the Waterworks District made formal demand on the Department for the sum of $263,040.00, representing $2,740.00 per month for the remaining approximately eight years remaining under the contract’s terms. Thereafter, on December 30, 2013, the Waterworks District filed a petition against the Department, seeking payment of the balance allegedly due under the terms of the contract.
The Department answered the petition, and on December 16, 2015, the Waterworks District filed a motion for summary judgment. The Department filed its own motion for summary judgment on February 11, 2016, which also served as its opposition to the Waterworks District’s motion. Following a hearing on March 7, 2016, the trial court granted the Waterworks District’s motion for summary judgment and denied the Department’s motion. The Department then appealed the April 5, 2016 judgment.[1]
SHOW CAUSE ORDER
By show cause order dated June 6, 2016, this court ex propño motu directed the parties to address an apparent defect in the appeal in that the judgment was ambiguous as to the specific relief granted to the plaintiff. We also remanded the matter for the limited purpose of allowing the trial court to sign an amended judgment, if it so chose, in accordance with LSA-C.C.P. Art. 1951.[2] An amended judgment was submit *4 ted by counsel for the parties and signed by the trial court on June 16, 2016. Counsel also submitted a motion to supplement the record that was signed by the trial court on June 21, 2016. Thereafter, the rule to show cause was referred to the panel |4to which the appeal was assigned. Because the defect in the original judgment has been remedied by the parties and the trial court, we find that the amended judgment is a final and appeal-able judgment, and we recall the show cause order.[3]
DISCUSSION
Initially, we note that the Waterworks District’s motion for summary judgment was filed pursuant to the former version of LSA-C.C.P. Art. 966,[4] whereas the Department’s motion for summary judgment is governed by the version of LSA-C.C.P. Art. 966 after its amendment by 2015 La. Acts No. 422, effective January 1, 2016. Under both versions, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, is favored, and shall be construed to accomplish these ends. LSA-C.C.P. Art. 966A(2) (as amended by 2015 La. Acts No. 422).[5] After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966A(3).[6]
The burden of proof continues to rest with the mover. LSA-C.C.P. Art. 966D(1) (as amended by 2015 La. Acts No. 422).[7] Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court .on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The burden is on the adverse party to |Bproduce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. Art. 966D(1) (as amended *5 by 2015 La. Acts No. 422). When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. Art. 967B.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Fonseca v. City Air of Louisiana, LLC, 15-1848 (La.App. 1 Cir. 6/3/16), 196 So.3d 82, 86. Thus, an appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Janney v. Pearce, 09-2103 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 10-1356 (La. 9/24/10), 45 So.3d 1078.
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. LSA-C.C. Art. 1983; Silwad Two, L.L.C. v. I Zenith, Inc., 12-0282 (La.App. 1 Cir. 12/21/12), 111 So.3d 405, 410. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. Art. 2045. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. Hampton v. Hampton, Inc., 97-1779 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1188-89.
The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 12-2055 (La. 3/19/13), 112 So.3d 187, 192. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. Art. 2046: Common intent is determined, therefore, in accordance with the general, ordinary, plain |fiand popular meaning of the words used in the contract. Clovelly, 112 So.3d at 192. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Id. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Id.; see also LSA-C.C. Art. 2047.
Although summary judgment is generally not appropriate to establish the intent of contracting parties, where the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Hayden v. Phillips, 94-0130 (La.App. 1 Cir. 11/10/94), 646 So.2d 1014, 1016, writ denied, 95-0244 (La. 3/24/95), 651 So.2d 291; see also LSA-C.C. Art. 1848. Under those circumstances, the interpretation of the contract is a matter of law and summary judgment is appropriate. Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La. 5/22/07), 956 So.2d 583, 590.
*6 In its appeal, the Department argues that it had to terminate the contract with the Waterworks District due to a lack of funding, but that it did so within the con-fínes of the law. Specifically, it contends that the trial court disregarded LSA-R.S. 39:1615C, of the Louisiana Procurement Code, which provides:
Termination due to unavailability of funds in succeeding years. When funds are not appropriated to support continuation of performance in a subsequent year of a multiyear contract for supplies, services, or major repairs, -the, contract for such subsequent year shall be terminated. When a contract is terminated under these conditions, no additional funds shall be paid to the contractor as a result of such action.
The Department maintains that the Water Purchase Contract is a contract for supplies or services and, therefore, it had the authority to terminate the multiyear contract. The Department also insists that the law is designed to protect the State from wasteful spending and that the State should not be obligated to continue to pay for a service it 17does not use for a facility that is no longer operational and for which funds are no longer appropriated.[8]
On the other hand, the Waterworks District argues that LSA-R.S. 39:1615C is inapplicable to the matter before us and that the contract was unilaterally terminated by the Department for reasons not permitted under the terms of the contract. In making its argument, the Waterworks District avers that there were two separate-obligations under the contract. First, it contends, the Waterworks District’s obligation was to build a water main for the Department, along with the Department’s corresponding obligation to pay for the water main in monthly installments over a period of twenty years. Second, the Waterworks District asserts it had a separate obligation to make water available for the Correctional Center’s use, with the Department’s corresponding obligation to pay a fee for the water used, if any, by the Correctional Center. The Waterworks District contends that this was established, not only by the terms of the contract, but by the parties’ written negotiations and by billing of the Department separately for each obligation since the beginning of the term of the contract.
The Waterworks District emphasizes that it did not seek to recover the past due water usage, stating the past water usage could possibly be considered a contract for supplies or services. Rather, it argues, its claim was only for the remaining balance owed under the contract for the installation of the water main, which obligation cannot be construed to be a contract for supplies or services. The Waterworks District asserts that installation of a water main clearly does not constitute a contract for “supplies,” which is defined in the Procurement Code as- “all property, including but not limited to equipment, materials, insurance, and leases on immovable property excluding land or a permanent interest in land.” LSA-R.S. 39:1556(59). Further, it contends that it is not a | ^contract *7 for “services,” defined in the Procurement Code, in pertinent part, as “the furnishing of labor, time, or effort by a contractor whose primary purpose is to perform an identifiable task rather than to furnish an end item of supply.”[9] The Waterworks District argues that furnishing “an end item of supply” is precisely what the contract required it to do.
The parties do not dispute the essential facts of this matter. In support of their motions for summary judgment, each party introduced a copy of the water purchase contract together with correspondence concerning the cancellation of the contract. The contract provided that the Waterworks District, as seller, and the Department, as purchaser, “have entered into a water purchase agreement” according to certain terms and conditions, including, the following:
1. SELLER agrees to furnish to PURCHASER at its facility in Caddo Parish, Louisiana, potable treated water meeting applicable purity standards of State and Federal Regulatory Authorities in such quantities as may be required by the PURCHASER not to exceed eighty thousand (80,000.00) gallons per day, subject to the terms and conditions as set forth hereinafter.
2. SELLER shall install at its expense an eight-inch diameter water transmission main and PURCHASER will install, at its expense, according to the terms and specifications of SELLER, a water meter, service line, and a cutoff valve.
3. The term of this contract shall be for a period of twenty (20) years.
4. PURCHASER agrees to pay to SELLER, not later than the 10th day of each month, for water delivered during the prior month, the amount of $2,740.00, together with a sum of money equal to Two and 25/100 ($2.25) Dollars per thousand gallons furnished.
|flIn accordance with the statutory provisions above, we have carefully reviewed the contract and specifications language and, upon our de novo review, find that the terms of the contract are clear and explicit, lead to no absurd consequences, and therefore, we need not interpret the contract in search of the parties’ intent. The Waterworks District argues that the written negotiations regarding the contract evinced its. intent that the base rate of $2,740.00 per month for twenty years, was for the actual cost of the design and installation of the water main.[10] However, having found no ambiguity in the contract, no further interpretation may be made in search of the parties’ intent. See LSA-C.C. *8 Art. 2046. In such cases, the meaning and intent of the parties to the -written contract must be sought -within the four comers of the instrument and cannot be explained or contradicted by parol evidence. See LSA-C.C. Art. 1848; Hampton, 713 So.2d at 1189. Therefore, we do not consider this extrinsic evidence.
The foregoing provisions establish that the contract was for the purchase of water. Nothing in the language suggests that the $2,740.00 amount was a separate and distinct obligation for the cost of the installation of the water main. Further, “supplies” consists of “all property, including but not limited to equipment.” LSA-R.S. 39:1556(59). Therefore, finding that the contract at issue was “a multiyear contract for supplies, services, or major repairs” and that funds were not appropriated to support continuation of the performance of the contract, the contract was terminated pursuant to LSA-R.S. 39:16150. Accordingly, the trial court erred in granting the Waterworks District’s motion for summary judgment and in denying the Department’s motion for summary judgment, and we render summary judgment in the Department’s favor dismissing all claims against it.
CONCLUSION
For the above and foregoing reasons, we reverse the June 16, 2016 judgment that granted summary judgment in favor of the Waterworks District and denied the Department’s cross-motion for summary judgment. Furthermore, we render summary judgment in favor of the Louisiana Department of Public Safety and Corrections | mdismissing with prejudice all claims filed against it by Waterworks District No. 1 of DeSoto Parish. All costs associated with this appeal totaling $1,153.50 shall be assessed against the Waterworks District.
RULE TO SHOW CAUSE RECALLED; REVERSED AND RENDERED.

. The denial of a motion for summary judgment is an interlocutory judgment and is ap-pealable only when expressly provided by law. However, where there are cross-motions for summary judgment raising the same issues, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross motion for summary judgment. See Crowe v. Bio-Medical Application of Louisiana, LLC, 14-0917 (La. App. 1 Cir. 6/3/16), 208 So.3d 473, 479-80 n.6, 2016 WL 3126425; MP31 Investments, LLC v. Harvest Operating, LLC, 15-0766 (La. App. 1 Cir. 1/22/16), 186 So.3d 750, 755.

. Louisiana Code of Civil Procedure Article 1951 provides:
On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but *4 not its substance, or to correct errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received.

. We note that the original judgment provided that the Waterworks District “is entitled to all other general and equitable relief.” However, in the amended judgment, this language was removed.

. The Waterworks District filed its motion for summary judgment on December 16, 2015, and it is therefore governed by the version of LSA-C.C.P. Art. 966 in effect after its amendment by 2014 La. Acts No. 187. Although LSA-C.C.P. Art. 966 was later amended by 2015 La. Acts No. 422, the provisions of Act 422 do not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the act, January 1, 2016. See 2015 La. Acts No. 422, § 2; Bouquet v. Williams, 16-0134 (La.App. 1 Cir. 10/28/16), 206 So.3d 232, 239 n.3, writs denied, 16-2077, 16-2082 (La. 1/9/17), 214 So.3d 871, 2017 WL 347593.

. The 2015 Comments to LSA-C.C.P. Art. 966 provide that subparagraph A(2) does not change the law.

. The 2015 Comments to LSA-C.C.P. Art. 966 provide that subparagraph A(3) does not change the law.

. The 2015 Comments to LSA-C.C.P. Art. 966 provide that subparagraph D(l) does not change the law.

. While the Department cites the First Circuit case of All American Assur. Co. v. State Through Dept. of Civil Service and Div. of Admin., 621 So.2d 1129 (La.App. 1 Cir. 1993), in support of its argument, we agree with tire Waterworks District and find the facts of All American distinguishable. Although the court in All American referred to LSA-R.S. 39:1615 in a footnote, the actual holding was based on the terms of the lease, which contained language allowing cancellation, upon adequate notice, due to the lack of public funding. All American, 621 So.2d at 1130. Therefore, “[t]he lease was terminated according to the provisions and terms of the lease.” All American, 621 So.2d at 1131. No such language was contained in the contract at issue herein.

. LSA-R.S. 39:1556(51) also provides:
(a) Services include but are not limited to the following:
(i) Maintenance, overhaul, repair, servicing, rehabilitation, salvage, modernization, or modification of supplies, systems, or equipment.
(ii) Routine recurring maintenance of immovable property.
(iii) Housekeeping services.
(iv) Operation of government owned equipment, immovable property, and systems.
(v) Information technology services.
(b) The term “services” shall not include:
(i)Employment agreements or collective bargaining agreements.
(ii) Personal, professional, consulting, or social services as defined in this Chapter.
(iii) Services performed by lawyers as provided by R.S. 42:261 through R.S. 42:264.
(iv) Services performed by an architect, engineer, or landscape architect as provided by R.S. 38:2310 through R.S. 38:2314.

. Particularly, the Waterworks District refers to the March 2, 2000, letter, from James A. Hagan, Jr. of Balar Associates, Inc. to the warden at the Correctional Center, which was during the negotiation phase of the contract, and submitted with its motion for summary judgment.