STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0707

CHRISTOPHER MARTIN

VERSUS

ISC CONSTRUCTORS, L.L.C. AND CINTAS CORPORATION

Judgment Rendered:  **MAR 1 3 2024**

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 669821

The Honorable Richard "Chip" Moore, III, Judge Presiding

Andy Dupre
Ilijana Todorovic
New Orleans, Louisiana

J. Kyle Findley
Adam D. Lewis
Roland T. Christensen
Kason R. Kimberly
Kelsey Stallings
Trevor Courtney
Caj Boatright
Kurt Arnold
Houston, Texas

A.M. "Tony" Clayton
Michael Fruge
Richard J. Ward, III

Counsel for Plaintiff/Appellant,
Christopher Martin

McClendon, J. Concurs with the result reached by the majority.

Michael C. Hendry
Port Allen, Louisiana


Quentin F. Urquhart, Jr.
Gretchen F. Richards
Haley Zhu-Butler
Victor M. Dantin
New Orleans, Louisiana

Matthew W. Bailey
Hillary B. Anderson
Shannon M. Jaeckel
Baton Rouge, Louisiana

Counsel for Defendant/Appellee,
Cintas Corporation No. 2

BEFORE:  McCLENDON, HESTER, AND MILLER, JJ.

**MILLER, J.**

Christopher Martin ("Martin") appeals the trial court's February 28, 2023 judgment, which granted the motion for summary judgment filed by Cintas Corporation ("Cintas") and dismissed with prejudice Martin's claims against it. For the following reasons, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

On February 13, 2018, Martin worked for Dow Chemical Company ("Dow") as a process operator in Deer Park, Texas. On that date, Martin was working near a tank when it suddenly erupted and caused the area where Martin was standing to be filled with hot chemicals. Martin suffered second and third degree burns on his feet and ankles. When the incident took place, Martin was wearing shoes he purchased from Cintas, pursuant to a contract between Dow and Cintas wherein Cintas would provide safety shoes to Dow's employees. The shoes were made of leather and had a mesh tongue.

On May 30, 2018, Martin filed a petition for damages against ISC Constructors, L.L.C.[1] ("ISC") and Cintas. Martin contended he suffered severe and permanent injuries as a result of the negligence of ISC and Cintas. Specifically, Martin alleged he was injured because Cintas "negligently and grossly negligently" failed to provide proper safety equipment, failed to comply with applicable rules and regulations, failed to provide adequate protective gear, failed to provide a safe uniform for Martin's work environment, failed to attach adequate warnings to the shoes, failed to adequately supervise its employees, failed to provide adequate training to its employees, failed to adequately warn Martin of the dangers of the shoes, and other acts deemed negligent and grossly negligent. Cintas filed its answer on February 1, 2019, and ISC filed its answer on February 7, 2020. Martin

---

[1] Martin alleged the valves and meters located at or near the tank were inspected annually by ISC.

3

filed a motion for leave to amend his petition, which was set for a hearing on June 20, 2022. However, the parties agreed to pass on the hearing.

On December 16, 2022, Cintas filed a motion for summary judgment. Cintas alleged Martin could not meet his burden of proof against Cintas because he could not show that Cintas owed any duty to provide shoes that protected against exposure to hazardous chemicals or any duty to ensure Martin was wearing rubber boots[2] at the time of the accident. Cintas further contended there were no genuine issues of material fact, and Cintas was entitled to judgment as a matter of law. In support of its motion for summary judgment, Cintas filed the 2013 Dow Commercial Agreement ("2013 Agreement"); the deposition of Priscilla Martin; the deposition of Frank Burg; the HHub Safety Shoe Policy; the deposition of Tony Raven; the deposition of Edward Sebesta; the deposition of Cintas through its corporate representative, David Starr; the deposition of Martin; Amendment #2 to the Dow Chemical Company Commercial Agreement MA-2013-00207 ("Amendment #2"); Amendment #3 to the Dow Chemical Company Commercial Agreement MA-2013-00207 ("Amendment #3"); Dow Confidential Document labeled TDCC-MARTIN-000012 and TDCC-MARTIN-000013; the original petition for damages; the jury order; and the request for notice.

Martin filed his opposition to Cintas's motion for summary judgment on January 31, 2023.[3] In support of his opposition, Martin filed his deposition; the

_____

[2] Martin's petition for damages states he was "wearing rubber boots" provided to him by Cintas. Cintas then filed a motion for summary judgment, asserting Martin could not show that Cintas owed any duty to ensure Martin was "wearing rubber boots" at the time of his accident. In Martin's appellant brief with this court, he contends he "never claimed that Cintas had a duty to provide rubber shoes" and Cintas was required to provide footwear meeting all specifications that were both acknowledged by Cintas as applicable to the footwear under the contract and supplied to Cintas by Dow.

[3] Martin's opposition was timely filed pursuant to La. C.C.P. 966, but it was not timely served. Cintas objected to the late-served opposition. However, the trial court considered it and allowed Martin to argue at the hearing. In its appellee brief, Cintas again contends that Martin's opposition should not be considered because it was not timely served. Since we have concluded that Cintas's motion for summary judgment has not been properly supported and the burden does not shift to Martin to produced factual support sufficient to establish he will likely be able to satisfy his burden of proof at trial, the issue of Martin's late-served opposition is moot.

deposition of Cameron Pomeroy; the Dow post-incident root cause investigation report; the deposition of Edward Sebesta; the deposition of Priscilla Martin; the HHub Safety Shoe Policy; the deposition of Cintas through its corporate representative, David Starr; email correspondence between David Starr and Edward Sebesta; the deposition of Mac Moser; the deposition of Andrew Davidson; the 2013 Agreement; the deposition of Dr. Zal Phiroz; the affidavit and expert report of Frank Burg; the deposition of Frank Burg; and the deposition of Tony Raven.

Cintas filed its reply memorandum on February 8, 2023. Cintas argued Martin's opposition was not timely under La. C.C.P. art. 966(B)(2); Martin's opposition did not comply with Louisiana District Court Rule 9.10; the unsworn and unverified report of Dr. Zal Phiroz was insufficient under La. C.C.P. art. 967; and Martin failed to show Cintas owed him any legal duty.

A hearing was held on February 13, 2023. The trial court considered all memoranda and reply memoranda in support of and in opposition to the motion, along with all documentary evidence submitted in support of and in opposition to the motion and all argument of counsel. Thereafter, the trial court granted Cintas's motion for summary judgment and dismissed Martin's claims against Cintas, with prejudice. A judgment to that effect was signed on February 28, 2023. Martin appealed.[4]

---

[4] In his "Motion for Devolutive Appeal," Martin seeks to appeal the judgments signed on February 28, 2023 and March 13, 2023. Both judgments arise out of the same motion for summary judgment filed by Cintas. The judgment dated February 28, 2023, provides that the motion for summary judgment filed by Cintas is granted and Martin's claims against Cintas are dismissed, with prejudice. The judgment further provides that each party is to bear their own costs. On the other hand, the judgment dated March 13, 2023, states that Cintas's motion for summary judgment is granted. An amendment to a final judgment which adds to, subtracts from, or in any way affects the substance of the judgment, is considered a substantive amendment, and is generally prohibited under La. C.C.P. art. 1951. Locke v. Madcon Corporation, 2021-0382 (La. App. 1st Cir. 12/30/21), 340 So. 3d 946, 949. When a trial court substantively amends a judgment without adhering to the proper procedure, the amended judgment is an absolute nullity. When this court notices such an absolute nullity, we must vacate on our own motion. Id. Louisiana jurisprudence further provides that when a trial court signs a judgment and then signs another, the second judgment is an absolute nullity and without legal effect. Mack v. Wiley,

Martin contends the trial court erred in granting summary judgment due to the existence of genuine factual issues. Specifically, Martin alleges genuine factual issues existed as to whether (1) Cintas had a duty to provide safety footwear that complied with Dow's policies and requirements; (2) Cintas knew of Dow's policy that all safety footwear provided by Cintas be fully made of leather; and (3) Cintas had a duty to inquire about Dow's policies and requirements for safety footwear even if Dow did not provide it therewith.

## SUMMARY JUDGMENT

An appellate court reviews the grant or denial of summary judgment[5] *de novo* under the same criteria governing the trial court's determination of whether summary judgment is appropriate. M/V Resources LLC v. Louisiana Hardwood Products LLC, 2016-0758 (La. App. 1st Cir. 7/26/17), 225 So. 3d 1104, 1109, writ denied, 2017-1748 (La. 12/5/17), 231 So. 3d 624. Because this court reviews summary judgments *de novo*, we afford no deference to the trial court's underlying reasoning for its judgment. John River Cartage, Inc. v. Louisiana Generating, LLC, 2020-0162 (La. App. 1st Cir. 3/4/20), 300 So. 3d 437, 453 n.12. On *de novo* review, we also afford no deference to the legal standard or analysis applied by the trial court. Tucker v. Chatfield, 2023-0343 (La. App. 1st Cir. 11/9/23), --- So.3d ----, ---- 2023 WL 7410052, *4.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled

2007-2344 (La. App. 1st Cir. 5/2/08), 991 So. 2d 479, 486, writ denied, 2008-1181 (La. 9/19/08), 992 So. 2d 932. In this case, the March 13, 2023 judgment signed by the trial court subtracted from the substance of the February 28, 2023 judgment, thus, it is an absolute nullity. See La. C.C.P. art. 1951. Therefore, the March 13, 2023 judgment is vacated.

[5] Louisiana Code of Civil Procedure article 966 was amended by La. Acts 2023, No. 317, § 1; La. Acts 2023, No. 368, § 1, effective August 1, 2023. This court has determined that the amendments are substantive and cannot be applied retroactively. See La. C.C.P. art. 966, Comments – 2023, Comment (f); Ricketson v. McKenzie, 2023-0314 (La. App. 1st Cir. 10/4/23), ___ So. 3d ___, ___, 2023 WL 7037495, *4. Accordingly, in the instant matter, we apply the version of La. C.C.P. art. 966 in effect at the time the motion for summary judgment was submitted and heard.

6

to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment mover maintains the burden of proof. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. If the adverse party fails to meet this burden, the mover is entitled to judgment as a matter of law. Id.

## DISCUSSION

Louisiana courts have adopted a duty-risk analysis in determining whether liability for negligence exists under the facts of a particular case. Lafayette Steel Erector, Inc. v. G. Kendrick, LLC, 2022-0895 (La. App. 1st Cir. 8/30/23), 375 So. 3d 507, 514. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and (5) proof of actual damages (the damages element). Farrell v. Circle K Stores, Inc., 2022-00849 (La. 3/17/23), 359 So. 3d 467, 473. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Landers v. USIC Locating Servs., Inc., 2020-0890 (La. App. 1st Cir. 4/26/21), 324 So. 3d 1070, 1073-1074.

At trial, Martin would bear the burden of proving the elements of his claims against Cintas. Thus, for Cintas to prevail on summary judgment, it was required to point out to the court the absence of factual support for any of the elements of

Martin's cause of action. <u>See</u> La. C.C.P. art. 966(D)(1). Cintas's motion for summary judgment focuses on the duty element of the duty/risk analysis.

The existence of a duty is a question of law. <u>Farrell</u>, 359 So. 3d at 473. Specific duties can arise from codal, statutory, administrative and local laws, as well as private contracts and custom. <u>Doe v. McKesson</u>, 2021-00929 (La. 3/25/22), 339 So. 3d 524, 537 n.1 (Weimer, C.J., concurring); <u>Favret v. Favret</u>, 2022-0820 (La. App. 4th Cir. 7/31/23), 371 So. 3d 511, 521-522.[6] When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment. <u>Listach v. West Baton Rouge Parish School Board</u>, 2021-0079 (La. App. 1st Cir. 6/9/21), 328 So. 3d 450, 456, <u>writ denied</u>, 2021-00982 (La. 11/3/21), 326 So. 3d 887.

In this case, both Cintas and Martin agree the contract between Cintas and Dow is the source of the duty owed. Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. La. C.C. art. 1983; <u>Waterworks District No. 1 of Desoto Parish v. Louisiana Department of Public Safety & Corrections</u>, 2016-0744 (La. App. 1st Cir. 2/17/17), 214 So. 3d 1, 5, <u>writ denied</u>, 2017-0470 (La. 5/12/17), 219 So. 3d 1103. While Martin is not a party to the agreement between Cintas and Dow, Dow entered into the contract for the benefit of any "Eligible Recipient." The 2013 Agreement provides, in pertinent part, an "Eligible Recipient" is an entity that is specifically designated by Dow in writing to Cintas to be able to purchase products under the 2013 Agreement or otherwise be permitted to receive any and all benefits under the 2013 Agreement and which meets the "Eligible Recipient" definition. Under the agreement, "Eligible

---

[6] When a party has been damaged by the conduct of another arising out of a contractual relationship, the party may have two remedies, a suit in contract or a suit in tort, and he may elect to recover his damages under either of the two actions. <u>Wilson v. Two SD, LLC</u>, 2015-0959 (La. App. 1st Cir. 12/23/15), 186 So. 3d 103, 116. Where a cause of action arises from breach of a promise set forth in contract, the action is "ex contractu," but where it arises from a breach of duty growing out of contract, it is "ex delicto." <u>Id.</u> at 117.

Recipient," in part, means Dow or any entity that is or becomes an affiliate of Dow. Thus, under the 2013 Agreement, Martin, as an employee of Dow, was able to purchase shoes from the Cintas shoe truck. The shoes he purchased from the Cintas shoe truck are the shoes that he was wearing at the time of the accident. While Martin was not a party to the 2013 Agreement, a contracting party may stipulate a benefit for a third person called a third party beneficiary. See La. C.C. art. 1978.

Cintas argues Martin cannot show that Cintas owed any duty to ensure Martin was wearing rubber boots at the time of his accident. Cintas asserts the 2013 Agreement entered into by the parties indicated that the safety shoes must comply with ASTM F2413[7] and nothing in the 2013 Agreement specified that the shoes must provide protection against exposure to hazardous chemicals or that Cintas was required to perform a needs assessment or risk analysis in connection with the shoes offered. Cintas further argues Martin cannot show that Cintas owed any duty to Martin under Amendment #2 and Amendment #3.

The 2013 Agreement between Dow and Cintas was effective from March 1, 2013, to December 31, 2016. The 2013 Agreement provides, in pertinent part:

> The Dow Chemical Company ("DOW" or "BUYER"), a Delaware corporation . . . and CINTAS CORPORATION ("SELLER"), a Washington corporation . . . for valuable consideration the receipt and sufficiency of which is mutually acknowledged, agree as of March 1, 2013 to buy and sell, respectively, the Products and Services defined herein, subject to the terms and conditions set forth below.
>
> **DEFINITIONS AND GEOGRAPHIC COVERAGE**

---

[7] ASTM stands for the American Society for Testing and Materials. ASTM F2413 is the standard specification for performance requirements for protective (safety) toe cap footwear. This specification covers the minimum design, performance, testing, and classification requirements, and prescribes fit, function, and performance criteria for footwear designed to be worn to provide protection against a variety of workplace hazards that can potentially result in injury. *Standard Specification for Performance Requirements for Protective (Safety) Toe Cap Footwear*, ASTM INTERNATIONAL, https://www.astm.org/f2413-18.html (last modified Sept. 25, 2018).

9

Seller agrees that an Eligible Recipient may purchase products and services under this Agreement, either directly or indirectly through The Dow Chemical Company as its service provider.

\* \* \*

## PRODUCTS

DOW and other BUYERS may obtain any product listed in Exhibit B, attached to and made part of this Agreement, which is manufactured or distributed, sold or resold by SELLER ("Products").

Each Product supplied under this Agreement shall meet all pertinent specifications (1) which have been supplied to SELLER by DOW, or (2) which SELLER acknowledges apply to the product under this Agreement. Failure of a Product to meet pertinent specifications may result in a decision by DOW to terminate this Agreement.

\* \* \*

## QUALITY ASSURANCE, WARRANTY & SERVICE

\* \* \*

SELLER represents that it has and shall supply to DOW and Eligible Recipients qualified and experienced personnel ("Seller Employees") to perform Services. . . In addition, SELLER guarantees that all Services performed pursuant to this Agreement shall be performed in a professional and workmanlike manner in accordance with the highest industry standards.

\* \* \*

## TECHNICAL ASSISTANCE

SELLER agrees to provide limited technical assistance to BUYER at no charge to help BUYER complete the safety evaluation for certain applications, which may use SELLER's products. SELLER shall also provide recommendations to BUYER regarding which Products provide the lowest long term cost of ownership in specific applications.

\* \* \*

## SITE ACCESS REQUIREMENTS-BUYER SITES

\* \* \*

2. . . . SELLER assumes responsibility for any losses, claims, expenses, damages, liabilities and actions whatsoever brought or made against it, by reason of any matter or thing arising out of or in any way attributable to this Agreement, to the extent caused by SELLER's acts

10

of negligence or omissions, or the acts of neglect or omissions of those for whom SELLER is responsible at law.

*  *  *

## ENTIRE AGREEMENT; SEVERABILITY

This agreement consists of this document and all Exhibits and attachments which this document by its terms make a part hereof. This Agreement represents the complete agreement between the parties regarding the subject matter set forth in this Agreement, and no prior agreement, change, alteration, or other understanding or any terms stated in any release, order, order acknowledgment, invoice, other documentation, transmission via Internet Exchanges, or by any conditions, usage of trade, course of dealing or performance, understanding or agreement, oral or written, purporting in any way to modify the terms and conditions to this Agreement or its attachments shall be binding upon either party unless mutually agreed upon in writing by the respective duly-authorized representative of both parties and expressly stating an intention to amend or modify a particular provision . . .

The 2013 Agreement contains four attachments, Exhibit A, Exhibit B, Exhibit C, and Exhibit D. Exhibit A contains a list of locations where Cintas will provide services under the contract. Deer Park, Texas is listed as a location of service. Further, Exhibit A provides that the list of locations may be updated without a formal amendment to the 2013 Agreement. Exhibit B is the pricing information. Exhibit B provides, in pertinent part:

## PRICE LIST

Attached is the Price List . . . for all products and services currently sold by SELLER to BUYER. Any new line items to be added to this Price List require written approval by the DOW Agreement Manager prior to acceptance of any order by any DOW or Eligible Recipient site. . . .

Exhibit D provides, in pertinent part:

13. This Order is expressly limited to the terms and conditions contained in the provisions of this Order. Any additional, conflicting, or different terms or conditions set forth in any invoice, in any acknowledgment of this Order, or in any document other than this Order as issued by BUYER, shall have no effect.

The 2013 Agreement was extended on January 1, 2017, through Amendment #2. Then, on July 1, 2019, the 2013 Agreement was extended again through

Amendment #3 until January 2, 2019. There is an attachment to Amendment #3 titled "North America – Safety Shoe Billing Rates." This attachment contained the Puma Safety Shoe Model 642755 ("Puma Shoes").

The Puma Shoes that Cintas sold to Martin were a product made part of the agreement between Cintas and Dow. Since the Puma Shoes were supplied under the 2013 Agreement and Amendment #3, the shoes were required to meet all pertinent specifications that were supplied to Cintas by Dow and all pertinent specifications that Cintas acknowledged applied to the product under the agreement. However, it is not clear what specifications are meant by "all pertinent specifications." Thus, it is necessary to look outside of the agreement between the parties to determine what pertinent specifications were supplied to Cintas by Dow.

Priscilla Martin is a sourcing manager at Dow. In her role as a sourcing manager, she procures contracts with different companies. She indicated that she likely participated in the process of drafting the 2013 Agreement. Specifically, Priscilla stated that there would have been a request for proposal process where "things like required specifications, ASTM language, metatarsal type language, all of that would have been provided" as part of the requirement for safety shoes. However, she could not confirm what exact specifications were provided. Priscilla stated that all of the shoes in Exhibit B met the basic ASTM standard.

The HHub Safety Shoe Policy is an internal safety shoe policy at Dow. The document contains information about Dow's safety shoe policy and requires all Dow employees who may enter an industrial environment to wear safety shoes. "Safety shoes" are defined as leather footwear having approved toe protection. The policy further provides that minimum designations on safety shoes shall contain ASTM F2413-05, I75/C75 on the label and that it is important for the wearer to understand the classifications and requirements related to the hazards of the job. While the HHub Safety Shoe Policy contains pertinent specifications for Dow's

12

shoe requirements, it is not clear whether this document was made a part of the 2013 Agreement, Amendment #2, or Amendment #3. Further, the HHub Safety Shoe Policy is not signed by Cintas, and there is no evidence within the document that Cintas agreed to the terms and conditions in the document.

Dr. Frank Burg is an expert witness retained by Martin. Dr. Burg opined that Dow "had every reason to rely on [Cintas] as an agent responsible for providing the proper personal protective equipment." He further stated that the Dow specifications for safety shoes are that the shoes should meet the ASTM criteria for safety shoes and should be all leather. However, Dr. Burg could not pinpoint how he learned that those were the specifications. He also stated that Cintas should have been responsible for deciding if Martin should have worn rubber boots when he was in a certain area. Dr. Burg agreed that Cintas has a duty to know exactly which risks each employee may encounter and individually tell each employee what protective equipment to wear. He indicated that that duty would fall under professional responsibility rather than OSHA. Dr. Burg stated that Cintas should have done more than just rely on the information provided by Dow, and he disagreed with the proposition that Cintas was simply a shoe vendor. Additionally, Dr. Burg stated that the OSHA multi-employer worksite policy would impose an obligation on a vendor of personal protective equipment ("PPE") to perform a hazard analysis for the employees to whom the PPE is sold.

The deposition of Tony Raven was attached to Cintas's motion for summary judgment. At the time of Martin's accident, Raven worked at Dow was an Environmental, Health, and Safety Senior Technologist. Raven's job was to start an investigation process if someone was hurt or exposed on the job. He indicated that there was a PPE grid for each unit that everyone who worked in the unit must adhere to. Raven had little knowledge of the 2013 Agreement and indicated that he was not consulted when the listing of shoes was put together. Additionally, Raven

13

explained that the Dow standard that describes all PPE is located on the Dow intranet.

In his deposition, Edward Sebesta stated he has been a Contract Administrator for the Houston Hub for the past eight years, and he has worked at Dow for a total of forty-two years. He indicated he was not involved in the negotiation of the 2013 Agreement, Amendment #2, or Amendment #3. In administering the contract for the Houston Hub, Sebesta's duties included making sure that the Cintas shoe truck arrived on time at the designated locations, but he did not play any role in the selection of shoes that were offered. While he agreed that Dow expected Cintas to provide footwear that would abide by all the policies that Dow had, he made it clear that he did not have knowledge of the pertinent specifications required under the contract.

David Starr appeared as the corporate representative for Cintas. Starr indicated Cintas is primarily known as a uniform rental company, providing uniforms for employees, uniform programs, and a range of products and services for businesses. He further stated that Cintas provides safety footwear that is in compliance with ASTM F2413. Starr indicated he had no involvement with the development of the 2013 Agreement. However, Starr stated he was responsible for administering the contract because it was within his geographical area. According to Starr, Cintas worked with Dow sites to develop the list of shoe models that would be carried on the truck. Starr was involved in making sure the Cintas shoe truck was stocked with the shoe models that Dow chose based on the product and pricing schedule. Starr stated that the shoes that are on the Cintas shoe truck were decided by Dow and Dow's employees.

Starr further indicated it was not Cintas's job to determine the type of safety footwear a Dow employee needed. The Cintas truck workers received training to understand ASTM F2413 and the definitions of the subcategories within that

14

standard. Dow asked for safety footwear that complied with ASTM F2413, so that was what Cintas provided. Once the customer explained their needs to Cintas, Cintas would put together a product and pricing schedule for shoe models that comply with the requirements. Cintas then relied on the manufacturers of the safety footwear to provide a product that met or exceeded ASTM F2413. Dow decided which shoes from the list would be included on the truck. He indicated that Cintas does not have knowledge of potential hazards that go on inside of a facility other than what the customer specifically tells them. Starr stated that he first saw the HHub Safety Shoe Policy after the incident and no one at Cintas saw the HHub Safety Shoe Policy before the incident. All of the shoes that Cintas was contracted to provide to Dow had to meet the ASTM standard.

Last, the deposition of Martin is attached. Martin indicated the only requirement he knew of for shoes was that they had to be steel toe. Martin specified if he was going to change a strainer or drain a tank or vessel, he would put on rubber boots and PPE because they were dealing with acid. He would use the rubber boots "maybe once a year." Martin stated there was a PPE grid chart on the wall that showed which PPE was needed for certain tasks. The PPE grid applied to Dow employees also. He said he was required to wear "block PPE," which means safety shoes. Martin explained that, at the time of the accident, he was working as a process operator; the shoes he purchased on November 4, 2016, were the shoes that were involved in the accident; the first time he saw the HHub Safety Shoe Policy was after the accident; and he worked in the oxidation unit.

After reviewing the evidence submitted by Cintas in support of its motion for summary judgment, we find Cintas failed to meet its initial burden of showing an absence of factual support for the duty element of Martin's claim. Whether Cintas had a duty in this case cannot be determined on summary judgment due to the factual dispute regarding what "pertinent specifications" were supplied by Dow

to Cintas. Both Martin and Cintas agree that the 2013 Agreement required the ASTM F2413 standard to be met. However, Cintas was unable to sufficiently show an absence of factual support regarding the duty element because disputed evidence was submitted regarding which pertinent specifications were supplied to Cintas by Dow. Specifically, Priscilla Martin stated there would have been a request for proposal process where things like required specifications and ASTM language would have been provided to Cintas as part of the requirement for safety shoes. Further, Dr. Burg indicated the specifications for safety shoes were that the shoes should meet the ASTM standard and should be all leather and that Cintas was responsible for providing proper PPE and deciding what employees should wear in particular areas.

Since the motion for summary judgment has not been properly supported by Cintas, and Cintas has not shown the motion for summary judgment should be granted, the burden does not shift to Martin to produce factual support sufficient to establish he will be able to satisfy his burden of proof at trial. Accordingly, we find the trial court erred in granting the motion for summary judgment.

## CONCLUSION

For the above and foregoing reasons, the trial court's February 28, 2023 judgment granting Cintas Corporation's motion summary judgment and dismissing Christopher Martin's claims against it, without prejudice, is reversed. All costs of this appeal are assessed to Cintas Corporation.

**REVERSED.**