STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CA 1013

IBERIABANK, A DIVISION OF FIRST HORIZON BANK

VERSUS

NATURE'S WAY ENERGY SERVICES, LLC AND
ANDREW J. HARRISON, JR.

**Judgment Rendered:** APR 1 7 2024

* * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C704699

Honorable Kelly Balfour, Presiding

* * * * * *

Brett P. Furr                                    Counsel for Plaintiff/Appellee
Vincent V. Tumminello III                        First Horizon Bank
William H. Patrick, IV
Baton Rouge, LA

Phillip A. Wittmann                              Counsel for Defendant/Appellant
Walter F. Metzinger III                          Andrew J. Harrison, Jr.
Andrew D. Mendez
New Orleans, LA

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Chutz, J. - Concurs

**GUIDRY, C.J.**

Plaintiff/appellant, Andrew J. Harrison, Jr., appeals from a judgment of the trial court granting summary judgment in favor of defendant, First Horizon Bank (First Horizon), rendering judgment against Harrison and in favor of First Horizon in the amount of $175,000.00, plus legal interest thereafter accruing, and costs, and denying Harrison's cross-motion for partial summary judgment. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 2012, Harrison, along with Jules Simon, Donald Davis, Wendell Spencer, and Timothy Moreau, organized and formed Nature's Way Energy Services, LLC (NWES). On May 3, 2012, NWES executed a promissory note in favor of IberiaBank (Iberia) in the principal amount of $700,000.00. Thereafter, on April 14, 2013, Iberia issued letter of credit No. 7152 in favor of the Railroad Commission of Texas (Commission) in the amount of $519,816.00 for the account of NWES, which was required by the Commission to secure NWES's obligations to close and remediate a disposal pit in Texas. In accordance with its agreement to reimburse Iberia pursuant to the terms and conditions of the letter of credit, NWES executed a promissory note dated August 14, 2013, and payable on demand, in the original principal amount of $519,816.00. NWES's indebtedness to Iberia was secured by commercial guarantees executed by Harrison, Simon, Davis, Spencer, and Moreau, which each guaranteed NWES's indebtedness to Iberia for the lesser of $600,000.00 or 33.333% of the principal amount, interest, costs, expenses, attorney's fees, and other fees and charges related thereto. On April 20, 2018, the Commission drew on the letter of credit, and Iberia paid the Commission $519,816.00.

Thereafter, on October 25, 2018, Iberia filed suit against NWES, Harrison, Simon, Davis, Spencer, and Moreau for repayment of NWES's indebtedness in connection with the letter of credit issued in favor of the Commission. Harrison

2

responded by filing a cross-claim against Simon, Davis, Spencer, and Moreau and a reconventional demand against Iberia. Iberia and Harrison subsequently entered into a Contractual Subrogation agreement dated November 19, 2019, wherein Iberia agreed, upon receipt from Harrison of $201,226.05, to execute a partial dismissal of its 2018 suit against Harrison, release him from his obligations under the Commission letter of credit, and cancel his commercial guaranty. Iberia further agreed that Harrison would be subrogated to Iberia's rights against Simon, Davis, and Spencer on their commercial guaranty agreements and the letter of credit to recover the amount paid by Harrison to Iberia in excess of Harrison's 1/5 virile share. Harrison further acknowledged and agreed that the agreement and the subrogation rights granted to him therein shall at all times be subordinate to Iberia's claims against Simon, Davis, and Spencer, and NWES on the same terms and conditions and to the same extent as provided for in the commercial guarantees in favor of Iberia. Harrison further agreed that any and all collateral previously pledged to Iberia would remain pledged as security for NWES's indebtedness and further agreed to release Iberia from any claims and/or liability related to the loan relationship.

On May 8, 2020, Harrison filed an amended and supplemental cross-claim wherein he named NWES as a cross-claim defendant and requested a preliminary and permanent injunction compelling NWES to place any refund received from the Commission into the court registry. Additionally, there was a pending action filed by Harrison against Nature's Way Safety Solutions, LLC, Spencer, Davis, Nature's Way Investments, LLC, Davis Management Group, Inc., and Questco, Inc. Harrison subsequently entered into a "Settlement Agreement and Release" on October 21, 2020, with NWES, Davis, Davis Management Group, Inc., Drakes Catering, LLC, Moreau, and EDG, Inc. The terms of the settlement agreement provided that the refund due to NWES from the Commission would be placed in an escrow account,

3

and Harrison would receive $175,000 of the refund amount from escrow. Harrison, in exchange, released any and all claims he had or could have brought against the named parties to the settlement and the named parties agreed to release any claims they could have asserted against Harrison.

Thereafter, on February 12, 2021, Iberia filed a petition for revocatory action, breach of contract, and damages, naming NWES and Harrison as defendants. Iberia alleged that NWES's indebtedness under the two promissory notes was past due, owing, and in default, and it sought judgment for the amounts owing under the notes. Specifically, with regard to Harrison, Iberia alleged that pursuant to the contractual subrogation, Harrison's subrogation rights were subordinate to Iberia's claims against Simon, Davis, Spencer, and NWES and therefore, sought judgment revoking all transfers of cash or other valuable consideration from NWES to Harrison and ordering Harrison to pay any and all amounts distributed to him from NWES up to the amount of NWES's indebtedness under the notes, along with attorney's fees incurred by Iberia in collection of the indebtedness.

Harrison filed an answer and reconventional demand on January 14, 2022, alleging that Iberia breached the contractual subrogation agreement by initiating the present action seeking to collect from Harrison, because Iberia sought to enforce the letter of credit and commercial guaranty, which had been cancelled, and sought to subordinate Harrison's rights against NWES, which Harrison never agreed to subordinate under the contractual subrogation agreement.

Thereafter, on May 10, 2022, First Horizon Bank, successor by merger to Iberia, filed a motion for summary judgment asserting that there were no genuine issues of material and that it was entitled to judgment finding: (1) NWES is indebted to Iberia in the aggregate amount of $832,066.86, plus interest accruing at the rate of $12.79 per diem pursuant to promissory notes owned and held by Iberia; (2) Harrison's acceptance of a $175,000.00 payment from NWES constituted a breach

4

of Harrison's contract with Iberia; and (3) Harrison is liable to Iberia in the amount of $175,000.00.

On August 15, 2022, Harrison filed a motion to compel compliance by Iberia with his request for production of documents. Harrison alleged that it served Iberia with a request for production of documents on March 7, 2022, and Iberia failed to respond completely or provided inadequate responses. Harrison alleged that the documents requested, which related to the loan history for each of the notes, were relevant and were needed to prepare his opposition to Iberia's motion for summary judgment.

Harrison thereafter filed a cross-motion for partial summary judgment on August 26, 2022. Harrison alleged that he gave consideration for the $175,000.00 disbursed to him from the escrow account, which defeats Iberia's claim for a revocatory action as a matter of law. Furthermore, Harrison alleged that under the clear language of the contractual subrogation agreement, Harrison's claims against NWES were not subordinated to Iberia's, which defeated Iberia's claim for breach of contract. Alternatively, Harrison alleged that if his motion for partial summary judgment were denied, First Horizon's motion should be denied in accordance with La. C.C.P. art. 967 because he needed additional time for discovery to establish a defense to First Horizon's motion.

Following a hearing on October 11, 2022, the trial court signed a judgment denying Harrison's cross motion for partial summary judgment, denying Harrison's motion to compel, granting summary judgment in favor of First Horizon, and rendering judgment against Harrison and in favor of First Horizon in the amount of $175,000.00, with legal interest accruing thereafter and all costs of the proceeding. Harrison now appeals from the trial court's judgment.

**DISCUSSION**

**Standard of Review**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).[1] An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La. 7/5/94), 639 So. 2d 730, 751.

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet its burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. See La. C.C.P. art. 966(A)(4). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden. See La. C.C.P. art. 966(A)(3).

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if the mover will not bear the burden of proof at trial. See La. C.C.P. art. 966(D)(1); Babin v. Winn-Dixie Louisiana, Inc., 00-0078, pp. 4-5 (La. 6/30/00), 764 So. 2d 37, 39; Jenkins v. Hernandez, 19-0874, p. 4 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 20-00835 (La. 10/20/20), 303 So. 3d 315. The moving party must only point out to the court the absence of factual support for one or more elements essential to the adverse party's

---

[1] Louisiana Code of Civil Procedure article 966 was amended by 2023 La. Acts. No. 317, §1, effective August 1, 2023. Because the motions for summary judgment at issue in the instant appeal were filed in 2022, all references to La. C.C.P. art. 966 in this opinion are to the version in effect at the time the motions were filed.

6

claim, action, or defense. La. C.C.P. art. 966(D)(1); Mercadel v. State Through Department of Public Safety and Corrections, 18-0415, p. 6 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404, *3 (unpublished opinion). The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); see also La. C.C.P. art. 966, Comments— 2015, comment (j). If the non-moving party fails to produce sufficient factual support in its opposition, which proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. Babin, 00-0078 at p. 4, 764 So. 2d at 40; Jenkins, 19-0874 at p. 5, 305 So. 3d at 371.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Succession of Hickman v. State Through Board of Supervisors of Louisiana State University Agricultural and Mechanical College, 16-1069, p. 5 (La. App. 1st Cir. 4/12/17), 217 So. 3d 1240, 1244.

The interpretation of a contract is typically a matter of law that may be properly decided on a motion for summary judgment. See Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La. App. 1st Cir. 6/20/97), 696 So. 2d 1031, 1036, writ denied, 97-1911 (La. 10/31/97), 703 So. 2d 29. Interpretation of a contract is the determination of the common intent of the parties, which is an objective inquiry. See La. C.C. art. 2045; McCary v. Oceaneering International, Inc., 17-1163, p. 5 (La. App. 1st Cir. 2/27/18), 243 So. 3d 613, 616. When the words of contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. Words

7

susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Baldwin v. Board of Supervisors for University of Louisiana System, 14-0827, p. 6 (La. 10/15/14), 156 So. 3d 33, 37.

In the instant case, First Horizon sought summary judgment asserting that NWES remained indebted to Iberia in the amount of $832,066.86, plus interest accruing at the rate of $12.79 per diem pursuant to promissory notes owned and held by Iberia, that Harrison's acceptance of the $175,000.00 payment constituted a breach of the contractual subrogation agreement between Harrison and Iberia, and that Harrison is liable to Iberia in the amount of the $175,000.00 payment.

In support of its motion, First Horizon submitted copies of the letter of credit, the two promissory notes, the commercial guaranty executed by Harrison, the affidavit of Sydney Gibbs, Senior Vice President for First Horizon with the responsibility for managing and servicing the loans, notes, and security interests at issue in this proceeding, the contractual subrogation agreement, and a copy of the cross-claim filed by Harrison wherein he named NWES as an additional defendant.

There is no dispute that the letter of credit and promissory notes evidence NWES's indebtedness to Iberia. Furthermore, according to Gibbs's statements in his affidavit, as of April 12, 2022, NWES was indebted to Iberia under the terms of the notes for $276,069.05, plus interest accruing at the rate of $5.01 per diem on the letter of credit note, and $105,997.81, plus interest accruing at the rate of $7.78 per diem on the other note. Accordingly, because NWES remained indebted to Iberia under the terms of these two notes, First Horizon asserts that Harrison's receipt of

8

the $175,000.00 was in violation of the contractual subrogation agreement he executed with Iberia.

Pursuant to the terms of the agreement, Harrison and Iberia acknowledged NWES's indebtedness to Iberia and Harrison's liability, as guarantor, for that indebtedness and resolved Harrison's and Iberia's respective claims against each other, agreeing:

1. Upon receipt from Harrison of the sum of $197,050.00, plus an additional sum of $4,176.05 to cover fees and costs, Iberia will execute a Partial Dismissal with Prejudice of its suit against Harrison, release him from his obligations under the Letter of Credit and cancel his Guaranty.

2. Iberia further agrees that Harrison will be subrogated to Iberia's rights against Davis, Spencer, and Simon on their Commercial Guaranty Agreements and the Letter of Credit to recover the amount paid by Harrison to Iberia in excess of Harrison's 1/5th virile share.

3. Harrison acknowledges and agrees that **this Agreement and the subrogation rights granted to Harrison herein shall at all times be subordinate to Iberia's claims against Davis, Simon, Spencer and NWES on the same terms and conditions and to the same extent as provided for in the Commercial Guarantees in favor of Iberia.** [Emphasis added.]

The commercial guaranty executed by Harrison, which guaranteed NWES's indebtedness to Iberia for the lesser of $600,000.00 or 33.333% of the principal amount, interest, costs, expenses, attorney's fees, and other fees and charges related thereto, contained a subordination provision which was incorporated into the contractual subrogation agreement between Iberia and Harrison in paragraph 3 of the agreement as quoted above. Specifically, the commercial guaranty stated:

> **GUARANTOR'S SUBORDINATION OF RIGHTS.** In the event that Guarantor [Harrison] should for any reason (A) advance or lend monies to Borrower [NWES], ... or (B) make any payment(s) to Lender [Iberia] or others for and on behalf of Borrower under Borrower's indebtedness, or (C) make any payment to Lender in total or partial satisfaction of Borrower's obligations and liabilities under this Guaranty, or (D) if Borrower's property is used to pay or satisfy any of Borrower's indebtedness, **Guarantor hereby agrees that any and all rights that Guarantor may have or acquire to collect from or be**

**reimbursed by Borrower** (or from or by any other guarantor, endorser or surety of Borrower's indebtedness), whether Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of Lender or otherwise, **shall in all respects ... be subordinate, inferior and junior to the rights of Lender to collect and enforce payment, performance and satisfaction of Borrower's indebtedness that then remains, until such time as Borrower's indebtedness is fully paid and satisfied.** [Emphasis added.]

From our review of the language of the contractual subrogation agreement and commercial guaranty, it is clear that Harrison agreed that his right to repayment from NWES was subordinate to the right of Iberia. The first paragraph of the subrogation agreement cancelled Harrison's commercial guaranty, and the second paragraph subrogated Harrison's right to recover the amount paid by him to Iberia in excess of his 1/5th virile share from three of his co-guarantors to Iberia's rights against those co-guarantors on their commercial guaranty agreements and the letter of credit. However, the third paragraph provides that the agreement **and** the subrogation rights granted to Harrison therein *shall be subordinate* to Iberia's claims against the three named co-guarantors and NWES on the same terms and conditions and to the same extent as provided for in the commercial guaranties in favor of Iberia. As such, although Harrison's obligation under the letter of credit was released and his commercial guaranty was cancelled, paragraph 3 clearly indicates that the subordination provision of the guaranty still applies to the contractual subrogation agreement itself and subordinates it to Iberia's claims against NWES.

By filing an amended cross-claim against NWES, alleging that NWES had "failed to reimburse Harrison or Moreau for any of the amounts paid to [Iberia] pursuant to the guaranties," alleging that "it is probable that [NWES] management will distribute [funds from the Commission] without reimbursement of any funds to Harrison, notwithstanding his payment of NWES'[s] obligations," and seeking judgment against NWES restraining NWES from disbursing any funds paid to NWES by the Commission, directing NWES to immediately pay into the registry of

10

the court all funds received from the Commission, and seeking damages in an amount to be proven at trial, plus attorney's fees and costs of the proceedings, Harrison sought to protect and assure his right to be reimbursed by NWES for the amounts he paid pursuant his guaranty. Furthermore, by executing the settlement agreement with regard to his cross-claim and other pending Iberia litigation, and agreeing to receipt of the $175,000.00 payment in exchange for his "waiver, release, and discharge of NWES from all claims, causes of action, payments, loan demands, and claims for contribution or reimbursement ... damages and/or any right of any nature, whether known or unknown ... that Harrison may now have, may hereafter acquire, or may have had....[,]" Harrison received reimbursement for amounts he paid on behalf of NWES pursuant to his commercial guaranty. Therefore, the $175,000.00 payment falls within the subordination provision of the commercial guaranty, as incorporated by the contractual subrogation agreement, and Harrison's receipt of these funds constitutes a breach of the subrogation agreement.

Harrison contends, in opposing the summary judgment, that even if it is determined he is liable to Iberia for the amount received in the settlement, there is a genuine issue of material fact as to the amount of NWES's indebtedness. Particularly, Harrison asserts that additional discovery could have established that NWES's indebtedness was less than $175,000.00, or even nothing, thereby reducing the amount owed by Harrison, and that the trial court erred in rendering a money judgment for $175,000.00 without permitting disclosure of such evidence.

From our review of the record, we do not find that Harrison has presented evidence that would create a genuine issue of material fact as to the amount owed on the notes. In support of its motion for summary judgment, First Horizon submitted the affidavit of Gibbs attesting to the amount owed as of April 12, 2022, on each of the notes. Harrison asserts that the discovery requested is necessary to verify Gibbs's affidavit testimony, but courts have recognized that a sworn statement

11

from a bank officer who is responsible for and has knowledge of the loan account is sufficient evidence to establish the amount owed in supporting a summary judgment motion. See e.g., JP Morgan Chase Bank, N.A. v. Jones, 42,396, p. 4 (La. App. 2nd Cir. 12/5/07), 972 So. 2d 1172, 1174. Furthermore, contrary to Harrison's assertion on appeal, the affidavit is not internally inconsistent or contradictory.

We likewise do not find that the trial court abused its discretion in rendering summary judgment in favor of First Horizon without permitting additional discovery. Prior to filing his cross-motion for partial summary judgment, Harrison filed a motion to compel, wherein he sought a full loan history for both notes and all documents related to the sale of Harrison's stock and collection of the consent judgment against Davis. At the hearing on First Horizon's motion for summary judgment and Harrison's cross motion for partial summary judgment, the trial court heard argument from counsel regarding Harrison's motion to compel. Counsel for First Horizon stated that the information Harrison sought had been previously provided in over 3,000 pages of discovery produced by First Horizon to Harrison. Counsel further stated with regard to the loan history, only four payments had been made, three being payments from guarantors, including Harrison, and the fourth being a payment occurring after Harrison's stock account was liquidated. Counsel averred that the information regarding these payments had already been produced.

The evidence submitted in connection with the motions for summary judgment indicates that Harrison and Moreau had made payments to Iberia pursuant to their guaranties, and Harrison acknowledges that Iberia entered into a consent judgment with Davis, another guarantor, pursuant to a consent judgment. There is also no dispute that the stock was liquidated in 2020. Therefore, considering the foregoing, including Gibbs's unrefuted affidavit testimony, we do not find that the trial court abused its discretion in rendering summary judgment in favor of First

Horizon without first requiring First Horizon to produce the requested loan documentation.[2]

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Andrew J. Harrison, Jr.

**AFFIRMED.**

---

[2] Harrison also alleges that a genuine issue of material fact exists as to the amount of the $175,000.00 payment attributable to Harrison's dismissal of his claims against NWES in a global settlement agreement among several different parties. However, we note that the settlement agreement submitted in connection with Harrison's cross-motion for summary judgment states that the Commission was issuing a refund to NWES in the original amount of $519,860.00 plus $25,00.00, which was to be held in escrow, and that the escrow account was to pay $175,000.00 to Harrison in exchange for Harrison's waiver and release of all claims and causes of action against NWES and the other named parties. Whether there were other parties to the settlement is immaterial to the fact that Harrison collected $175,000.00 from NWES, which is in violation of the contractual subrogation agreement. Therefore, we find Harrison's argument to be without merit.